# United States Court of Appeals
## For the First Circuit

No. 05-1122

UNITED STATES OF AMERICA,

Appellee,

v.

DAGOBERTO LUNA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. Mary M. Lisi, U.S. District Judge]

Before

Lipez, Circuit Judge,
Coffin, Senior Circuit Judge,
and Carter,* Senior District Judge.

Edward C. Roy, Assistant Federal Public Defender, for appellant.
Robert Clark Corrente, United States Attorney, with whom Donald C. Lockhart and Luis M. Matos, Assistant United States Attorneys, were on brief, for appellee.

February 9, 2006

_____

* Of the District of Maine, sitting by designation.

**LIPEZ, Circuit Judge**. This case requires us to analyze the statutory provision (8 U.S.C. § 1326(d)) that defines the circumstances under which a defendant charged with illegally reentering the United States after deportation may collaterally attack the validity of the removal order.[1] The defendant, Dagoberto Luna, appeals from the district court's denial of his motion to dismiss his indictment for illegal reentry. The district court held that the defendant did not meet the requirements of § 1326(d). We affirm.

## I.

### A. Luna's Background and Deportation Proceedings

Luna, a citizen of the Dominican Republic, entered the United States as a 5-day-old lawful permanent resident in 1973. His immediate family members, including his mother, father, and siblings, all live in the United States. Luna spent most of his childhood in Rhode Island, where he attended school until the 9th grade. Since that time, he has lived in New York and Rhode Island.

On April 9, 1993, at age 20, Luna was ordered deported after he was convicted in state court of third degree grand larceny. He returned to the United States at some point thereafter. On January 22, 1996, Luna pled guilty in state court to second degree assault. He was sentenced to three to six years

---

[1]We use the terms "removal" and "deportation" interchangeably in this opinion.

imprisonment. While he was serving his sentence, the Immigration and Naturalization Service ("INS") issued an Order to Show Cause charging that Luna was deportable on several grounds, including his assault conviction and his previous deportation order and reentry. Given "serious problems" regarding the validity of the previous deportation order,[2] the Immigration Judge ("IJ") found that Luna was deportable on the sole ground of being an alien convicted of an aggravated felony, see Immigration and Nationality Act ("INA") § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii) (formerly INA § 241(a)(2)(A)(iii), 8 U.S.C. § 1251 (redesignated 1996)), based on his second degree assault conviction.

During his hearing before the IJ, Luna applied for discretionary relief, requesting a waiver of deportation under former INA § 212(c). 8 U.S.C. § 1182(c) (repealed 1996).[3] The IJ

---

[2]The IJ in Luna's second deportation hearing noted that both Luna and the INS agreed that there were "serious problems with the respondent's original deportation hearing," because "the respondent was deported as having been convicted of two crimes involving moral turpitude . . . which was not shown in the respondent's case." Specifically, the IJ noted that "one of the underlying crimes, burglary in the third degree, is not necessarily a crime involving moral turpitude, unless it can be shown what specific crime the burglary was meant to commit" and that the INS had failed to establish its case. In addition, the IJ noted that "as a matter of equity, [Luna] testified that he did not appear in court because his child died immediately before the immigration hearing . . . and therefore his attendance there was impossible."

[3]Former § 212(c) provided that "[a]liens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General . . . . [T]his

did not consider the merits of Luna's application for relief, stating in his oral decision that "the respondent is statutorily barred from this and any other forms of relief from deportation" under the Attorney General's decision in In re Soriano, 21 I. & N. Dec. 516 (BIA 1996, A.G. 1997).[4]

In Soriano, the Attorney General determined that recent statutory amendments to the INA prevented all individuals with "aggravated felony" convictions in removal proceedings from obtaining discretionary relief from deportation. See id. at 533-40; see also Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996) (codified in various titles); Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009 (1996) (codified in various titles).[5]  Although Luna

_____

subsection shall not apply to an alien who has been convicted of one or more aggravated felonies and has served for such felony or felonies a term of imprisonment of at least 5 years."  8 U.S.C. § 1182(c)(repealed 1996).  By its terms, the statute appears to have applied only to lawful permanent residents "returning" to the United States and facing exclusion.  However, the statute has been interpreted to be applicable to any lawful permanent resident, facing exclusion or deportation, who met its eligibility requirements.  See Gomes v. Ashcroft, 311 F.3d 43, 44-45 (1st Cir. 2002).

[4]Decisions by the Attorney General in immigration proceedings are binding on the Board of Immigration Appeals and Immigration Judges. See 8 C.F.R. § 1003.1(g) (stating that "decisions of the Attorney General . . . shall be binding . . . [and] shall serve as precedents in all proceedings involving the same issue or issues").

[5]AEDPA amended INA § 212(c) to preclude relief for immigrants facing deportation due to an "aggravated felony."  IIRIRA

-4-

pled guilty to second degree assault before the relevant provisions of AEDPA and IIRIRA went into effect, the IJ concluded that, under Soriano, Luna could not apply for discretionary relief.

Luna, who was represented by a non-lawyer "accredited representative,"[6] appealed the IJ decision to the Board of Immigration Appeals ("BIA"). On June 10, 1998, the BIA affirmed, also relying on Soriano, telling Luna that he was "statutorily ineligible for [§ 212(c)] relief." Luna did not appeal the agency's decision in federal court. On November 8, 1999, he was deported for a second time.

## B. St. Cyr and Eligibility for INA § 212(c) Relief

In 2001, the Supreme Court corrected the Attorney General's misapplication of law. See INS v. St. Cyr, 533 U.S. 289 (2001). The Supreme Court emphasized that "the class of aliens whose continued residence in this country has depended on their eligibility for § 212(c) relief is extremely large," and that the retroactive repeal of such relief "would surely be contrary to familiar considerations of fair notice, reasonable reliance, and settled expectations." Id. at 295-96, 323 (citations and internal

---

completely repealed § 212(c) and created a new form of discretionary relief, "cancellation of removal," which also was not available for immigrants with "aggravated felony" convictions. See INA § 240A, 8 U.S.C. § 1229b(a).

[6]Under certain conditions, non-lawyers, including "accredited representatives" of approved non-profit organizations, may represent individuals in removal proceedings. See 8 C.F.R. §§ 292.1, 292.2.

-5-

quotation marks omitted).  The Court concluded that the repeal of § 212(c) relief did not apply retroactively to individuals who had pled guilty to a criminal charge prior to the effective date of the repeal.  Id. at 326.

After St. Cyr was decided, the government changed its position on the availability of § 212(c) relief for individuals who pled guilty or nolo contendere to crimes before the effective date of AEDPA and IRRIRA.  In 2004, the government implemented procedures for immigrants to reopen their removal cases in light of St. Cyr.  See 8 C.F.R. § 1003.44.  However, the procedures were not available for immigrants who had already "departed" the country. See 8 C.F.R. § 1003.44(k).

## C.  Luna's Indictment for Reentry and the District Court Decision

At some point after his second deportation, Luna reentered the United States.  On November 21, 2003, Luna was indicted for illegally reentering the United States without the express permission of the Attorney General, in violation of 8 U.S.C. §§ 1326(a) and (b)(2).  He filed a motion to dismiss the indictment, pursuant to 8 U.S.C. § 1326(d),[7] arguing that his

---

[7]Under the statute, a defendant may challenge the validity of a deportation order that serves as the basis for an indictment for illegal reentry.  See infra, Part III(A) (describing 8 U.S.C. § 1326(d)).

-6-

deportation was fundamentally unfair and thus could not serve as the basis for his illegal reentry indictment.[8]

In its Memorandum and Decision of April 13, 2004 ("April 13 Decision"), the district court denied Luna's motion to dismiss, holding that he failed to establish, as required by 8 U.S.C. § 1326(d)(3), that the IJ's failure to adjudicate his § 212(c) application prejudiced him. Luna filed a motion asking the district court to reconsider. On June 1, 2004, the district court issued a second Memorandum and Decision ("June 1 Decision") again denying the motion to dismiss. The court held that, in addition to Luna's failure to demonstrate prejudice, Luna also failed to establish the requirement under 8 U.S.C. § 1326(d)(2) that his underlying deportation proceedings improperly deprived him of judicial review. Luna appealed.

**III**.

The underlying facts are not in dispute, and we review the district court's legal conclusions <u>de</u> <u>novo</u>. <u>See</u> <u>United States</u>

---

[8]During the hearing on the motion to dismiss, the district court questioned whether the first deportation order, issued in 1993, could serve as a basis for the indictment for illegal reentry. However, the district court did not resolve the issue. In response to the district court's questioning during the hearing, the government stated that it focused on the second order of deportation because it believed that the first order of deportation was defective. On appeal, both the government and the defendant continue to focus solely on the second order of deportation, raising no arguments regarding the possible validity of the first deportation order as a basis for the indictment. Accordingly, our review will focus on the second order of deportation.

v. Loaisiga, 104 F.3d 484, 486 (1st Cir. 1997) (applying de novo standard of review to district court's decision to grant motion to dismiss an indictment for illegal reentry under a prior version of 8 U.S.C. § 1326).

The government argues that we should review the district court's prejudice determination for clear error. While we review factual findings under a clear error standard, the prejudice analysis in this case involves the application of law to undisputed facts and is part of an inquiry to determine whether the defendant has established the fundamental unfairness of his deportation hearing. Under these circumstances, we agree with our sister circuits that a district court's determination of whether a defendant has established prejudice pursuant to 8 U.S.C. § 1326(d)(3) is subject to de novo review. See United States v. Scott, 394 F.3d 111, 116-17 (2d Cir. 2005) (applying de novo review to district court's determination of whether defendant has established prejudice under 8 U.S.C. § 1326(d)(3)); United States v. Aquirre-Tello, 353 F.3d 1199, 1204 (10th Cir. 2004) (en banc) (same); United States v. Ubaldo-Figueroa, 364 F.3d 1042, 1047 (9th Cir. 2003) (same).

## A. **Mendoza-Lopez and 8 U.S.C. § 1326**

Under 8 U.S.C. § 1326(a), it is a crime for an individual who has been deported, removed, excluded, or denied admission to enter the United States unless he or she has the prior approval of

-8-

the Attorney General or shows that no such approval was needed. Section 1326(b) specifies enhanced penalties for illegal reentry based on the person's criminal history.

In United States v. Mendoza-Lopez, 481 U.S. 828 (1987), the Supreme Court held that a person who is prosecuted for illegal reentry based on a previous order of deportation must have meaningful review of the validity of his or her deportation order. The defendants in Mendoza-Lopez, having been indicted for illegally reentering the United States, argued that their previous deportation proceedings were fundamentally unfair because the IJ had failed to inform them adequately of their eligibility for "suspension of deportation," a form of discretionary relief. See id. at 831-32. The Supreme Court concluded that the defendants' motions to dismiss their indictments should be granted because they had been "deprived of their rights to appeal [their removal orders], and of any basis to appeal since the only relief [from deportation] for which they would have been eligible was not adequately explained to them." Id. at 842. As the Court explained, "where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be some meaningful review of the administrative proceeding." Id. at 837-38 (emphasis in original).

Congress essentially codified the Mendoza-Lopez decision as 8 U.S.C. § 1326(d). See United States v. Wilson, 316 F.3d 506,

-9-

515 n.1 (4th Cir. 2003) (Motz, J., concurring) (discussing the legislative history of § 1326(d)).  Section 1326(d) provides:

> In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order . . . unless the alien demonstrates that --
> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
> (3) the entry of the order was fundamentally unfair.

These elements are in the conjunctive; therefore, a defendant must satisfy all of them to successfully attack his removal order. See United States v. Roque-Espinoza, 338 F.3d 724, 728 (7th Cir. 2003); Wilson, 316 F.3d at 509; United States v. Fernandez-Antonia, 278 F.3d 150, 157 (2d Cir. 2002); United States v. Lepore, 304 F. Supp. 2d 183, 186 (D. Mass. 2004).

## B.  Application of § 1326(d) to Luna's Case

The interpretation of this statute presents us with several difficult issues of first impression.  While the parties agree that Luna has met the administrative exhaustion requirement of 8 U.S.C. § 1326(d)(1),[9] they disagree about whether Luna has met

---

[9]Under 8 U.S.C. § 1326(d)(1), a defendant who seeks to challenge the validity of his deportation order must have exhausted the administrative remedies during his removal proceedings or show that an appropriate exception applies.  See United States v. Sosa, 387 F.3d 131, 136-37 (2d Cir. 2004) (explaining the scope of the 8 U.S.C. § 1326(d)(1) requirement); Lepore, 304 F. Supp. 2d at 192

the other statutory requirements. The government argues that we can affirm the district court's order on either of its stated grounds -- that Luna was not deprived of judicial review under § 1326(d)(2) or that Luna has not established prejudice as part of the fundamental unfairness inquiry under § 1326(d)(3). The government also argues that, alternatively, we can affirm the district court's order because the defendant failed to establish that the errors in his hearing, even if prejudicial, rendered his deportation order fundamentally unfair under § 1326(d)(3). Luna argues that he meets all the statutory requirements. We address these arguments and discuss the second and third prongs of § 1326(d). However, because we conclude that Luna has not established prejudice under 8 U.S.C. § 1326(d)(3), we need not ultimately resolve all the statutory issues.

1. Section 1326(d)(2): Deprivation of Judicial Review

Under 8 U.S.C. § 1326(d)(2), a defendant who seeks to challenge the validity of his deportation order must demonstrate that "the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review." In its June 1 Decision, the district court held that Luna did not meet this requirement because he had an opportunity for

---

(same). We agree with the parties and the district court that Luna met this requirement by appealing the IJ's decision to the BIA in his case. See United States v. Perez, 330 F.3d 97, 100-01 (2d Cir. 2003) (indicating that an appeal of an IJ's decision or a denial of a motion to reopen to the BIA will satisfy 8 U.S.C. § 1326(d)(1)).

judicial review -- a writ of habeas corpus -- but failed to pursue it.[10] Luna argues that the IJ and the BIA effectively deprived him of judicial review by failing to properly inform him of his eligibility for relief, adjudicate his application for relief, or inform him of any right to appeal.

We have not previously interpreted § 1326(d)(2).[11]

---

[10]The availability of habeas review was a contested issue at the time of Luna's deportation proceedings. AEDPA and IIRIRA amended the INA to statutorily bar people with certain criminal convictions from seeking review of their final orders of removal through a petition for review to the courts of appeals. See 8 U.S.C. § 1252(a)(2)(c) ("[N]o court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense [under certain sections of the INA] . . . .") (amended 2005). During the time of Luna's deportation proceedings, the government was advancing the argument that no court had jurisdiction over such cases, even if the individual filed a writ of habeas corpus. The Supreme Court eventually rejected this argument. See St. Cyr, 533 U.S. at 314 (concluding that provisions barring certain people from pursuing direct review of their orders of removal do not apply to habeas review under 28 U.S.C. § 2241).

[11]We reject the government's suggestion that our precedent interpreting Mendoza-Lopez resolves this issue. Prior to the enactment of § 1326(d), we applied Mendoza-Lopez and held that defendants who deliberately and voluntarily withdrew their right to administratively appeal an IJ's decision to the BIA under the advice of counsel cannot show that they were deprived of meaningful judicial review. See United States v. Smith, 36 F.3d 128, 130-31 (1st Cir. 1994) (no deprivation of meaningful review where defendant under advice of counsel signed a motion withdrawing his appeal and provided no evidence that his waiver was involuntary); United States v. Smith, 14 F.3d 662, 664-65 (1st Cir. 1994) (no deprivation of meaningful review where defendant under advice of counsel filed an appeal but then later voluntarily withdrew his appeal); United States v. Vieira-Candelario, 6 F.3d 12, 15 (1st Cir. 1993) (same). These cases are distinguishable from the instant case because the defendants in those cases, unlike Luna, chose, on the advice of legal counsel, to affirmatively abandon their appeals. See Lepore, 304 F. Supp. 2d at 195 (discussing

-12-

However, Mendoza-Lopez provides some guidance. The Supreme Court held that an IJ's failure to adequately explain the availability of relief, resulting in an uninformed waiver of the right to appeal, was an error that deprived the individuals in that case of their opportunity for judicial review. Mendoza-Lopez, 481 U.S. at 842. Other than this specific holding, however, the Supreme Court has declined to further "enumerate which procedural errors are so fundamental that they may functionally deprive the alien of judicial review." See id. at 839 n.17.

In this case, the government essentially argues that, as the district court concluded, the availability of judicial review through a writ of habeas corpus is fatal to the defendant's claim under § 1326(d)(2). However, the conclusions of the few courts that have considered this argument have not been uniform. Compare Sosa, 387 F.3d at 137 ("[T]he fact that [a chance to file a habeas petition] technically existed does not necessarily mean that [the defendant] had an 'opportunity for judicial review' within the meaning of Section 1326(d)(2).") and United States v. Copeland, 376 F.3d 61, 68 (2d Cir. 2004) (noting that "[i]n Mendoza-Lopez itself, habeas review was apparently available to the aliens, yet the Court held that they were deprived of judicial review") with Roque-Espinoza, 338 F.3d at 729 ("Even though [the defendant] may have had good reason for thinking that he was not eligible for

cases).

-13-

discretionary relief from removal, because the IJ had so informed him, he should have realized that avenues of judicial review were available to him.").

Given the uncertainty in the law on this issue, we turn to § 1326(d)(3). Because, as we explain below, we conclude that Luna has not established prejudice, we need not decide whether, under § 1326(d)(2), the errors in Luna's case functionally deprived him of judicial review despite the availability of habeas review.

2. Section 1326(d)(3): Fundamental Unfairness

A defendant who seeks to challenge the validity of his deportation order must demonstrate that "the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d)(3). Under this prong, courts uniformly require a showing of procedural error and prejudice. See, e.g., Aguirre-Tello, 353 F.3d at 1207-08; Perez, 330 F.3d at 103-04; Ubaldo-Figueroa, 364 F.3d at 1050; Wilson, 316 F.3d at 510.

Courts disagree, however, on what type of procedural error, if prejudicial, would result in a fundamentally unfair deportation order under the statute. The Third, Fourth, and Fifth Circuits have held that § 1326(d)(3) requires a showing that the error in the deportation hearing has resulted in a deprivation of a liberty or property interest. See United States v. Torres, 383 F.3d 92, 103 (3rd Cir. 2004); Wilson, 316 F.3d at 510; United States v. Lopez-Ortiz, 313 F.3d 225, 230 (5th Cir. 2002). These

-14-

courts have rejected the argument that an agency's failure to adequately inform an immigrant of his or her eligibility for § 212(c) relief can establish fundamental unfairness, because an applicant has no liberty or property interest in discretionary relief. See Torres, 383 F.3d at 103 ("[B]ecause discretionary relief is necessarily a matter of grace rather than of right, aliens do not have a due process liberty interest in consideration for such relief."); Wilson, 316 F.3d at 510 ("[S]ection 212(c) does not create an entitlement, but is rather completely discretionary in nature."); Lopez-Ortiz, 313 F.3d at 230 ("Because eligibility for § 212(c) relief is not a liberty or property interest warranting due process protection, we hold that the Immigration Judge's error in failing to explain Lopez-Ortiz's eligibility does not rise to the level of fundamental unfairness.").

The Second and Ninth Circuits have taken a different approach. These courts have held that an agency's violation of the procedural protections in its statute or regulations, if prejudicial to the person facing deportation, can demonstrate fundamental unfairness under 8 U.S.C. § 1326(d)(3). See Copeland, 376 F.3d at 71-73; Ubaldo-Figueroa, 364 F.3d at 1042. They conclude, therefore, that an agency's failure to adequately inform an immigrant of his or her eligibility for § 212(c) relief, if prejudicial, can render the deportation fundamentally unfair. See Copeland, 376 F.3d at 72 ("The decisions holding that a failure to

-15-

inform an alien about Section 212(c) relief cannot be a fundamental error collapse [the] distinction [between a right to seek relief and the right to that relief itself] . . . . The issue, therefore, is not whether Section 212(c) relief is constitutionally mandated, but whether a denial of an established right [under agency regulations] to be informed of the possibility of such relief can, if prejudicial, be a fundamental procedural error."); Ubaldo-Figueroa, 364 F.3d at 1042 ("The requirement that the IJ inform an alien of his or her ability to apply for relief from removal is 'mandatory,' and 'failure to so inform the alien [of his or her eligibility for relief from removal] is a denial of due process that invalidates the underlying deportation proceedings.'") (quoting United States v. Muro-Inclan, 249 F.3d 1180, 1183 (9th Cir. 2001)).

Although we have not interpreted § 1326(d)(3), we have analyzed whether a deportation order was "fundamentally flawed" in the context of a defendant's challenge to his indictment for illegal reentry after Mendoza-Lopez. Loaisiga, 104 F.3d at 484-85. The defendant in Loaisiga claimed that he was not adequately advised of his right to self-obtained counsel. Id. We stated that we would "assume without deciding that it would be a fundamental flaw under Mendoza-Lopez to fail to advise one threatened with deportation of his statutory right to self-obtained counsel." Id. at 486. However, we found that the IJ complied with all relevant

-16-

statutory and regulatory requirements.  See id. at 485-86.  We then stated that "it has been left primarily to Congress and to INS regulations to dictate the course of proceedings -- which both bodies have done in some detail . . . .  Courts normally require nothing more in the way of procedural protection, except to prevent flagrant abuses -- normally those rising to the level of due process violations." Id. at 486 (emphasis in original).  Having found no statutory or regulatory violations, we asked whether the IJ violated the defendant's constitutional rights.

We did not resolve all of the constitutional issues, however.[12]  We held that, "for a collateral attack on a now-final deportation order, the defendant must show prejudice."  Id. at 487 (emphasis in original).  Because Loaisiga had not demonstrated prejudice, we held that he could not collaterally attack the validity of his deportation order.

---

[12]We noted that the IJ had repeatedly advised Loaisiga of his right to self-obtained counsel and had given him three weeks to seek an attorney prior to his deportation hearing.  See Loaisiga, 104 F.3d at 486.  In light of those facts, we rejected Loaisiga's claim that the IJ violated due process by failing to advise Loaisiga again of his right to counsel at the beginning of the hearing.  Id. ("[A]bsent some signal from Loaisiga -- such as a plausible request for a further delay -- we do not think that it was even close to a due process violation for the immigration judge to move on to the merits.").  However, we did not decide whether "due process required that Loaisiga be advised again at the close of the [] hearing of his right to obtain his own counsel for an appeal."  Id. at 487 (emphasis in original) (noting that "a respondent's inclination to appeal might be affected by being told (again) that he could be represented by counsel" but concluding that "this interesting issue need not be decided here").

In this case, the IJ failed to inform Luna of his eligibility for § 212(c) relief, provide him with an opportunity to apply for that relief, or adjudicate his application for relief.[13] The government argues that the errors do not render the entry of the deportation order fundamentally unfair under 8 U.S.C. § 1326(d)(3). However, as was the case in Loaisiga, we do not have to resolve the question of whether the agency's errors in this case would, if prejudicial, render the deportation proceedings fundamentally unfair. We agree with the district court's holding that Luna has not demonstrated prejudice.

As discussed above, the facts of this case are undisputed, and we review de novo the district court's determination that Luna has failed to establish prejudice. The standard for prejudice in this context is "a reasonable likelihood that the result would have been different if the error in the deportation proceeding had not occurred." Loaisiga, 104 F.3d at

---

[13]See 8 C.F.R. § 1240.11(a)(2) ("The immigration judge shall inform the alien of his or her apparent eligibility to apply for any of the benefits [of relief from deportation] enumerated in this chapter and shall afford the alien an opportunity to make an application during the hearing.") (emphasis added); 8 C.F.R. § 242.17(a) (amended 1998) ("The immigration judge shall inform the respondent of his or her apparent eligibility to apply for any of the benefits enumerated in this paragraph and shall afford the respondent an opportunity to make application therefor during the hearing."); 8 C.F.R. § 212.3(e) ("An application for the exercise of discretion under section 212(c) of the Act may be . . . submitted in proceedings before an Immigration Judge. . . . Such application shall be adjudicated by the Immigration Judge.") (emphasis added).

-18-

487.[14]  In other words, the defendant must show that, if the IJ had adjudicated his § 212(c) application, there is a reasonable likelihood that he would have received relief from deportation.

Given the undisputed factual findings of the district court, we therefore must consider how the IJ itself would consider these factors when adjudicating a § 212(c) waiver application.  In its decisions, the agency has "developed criteria, comparable to common-law rules, for deciding when deportation is appropriate." St. Cyr, 533 U.S. at 295 n.5 (citing Matter of Marin, 16 I. & N. Dec. 581 (BIA 1978)).  These criteria have included "the seriousness of the offense, evidence of either rehabilitation or recidivism, the duration of the alien's residence, the impact of deportation on the family, the number of citizens in the family, and the character of any service in the Armed Forces." Id.  Other factors include arrival in the United States as a child, history of employment, property or business ties, community service, and evidence of good character.  Marin, 16 I. & N. Dec. at 584-85. After noting all the factors in an individual's case, an IJ "must balance the adverse factors evidencing an alien's undesirability . . . with the social and humane considerations presented in his behalf."  Id. at 584.

---

[14]There may be some cases where the agency's violation of a petitioner's rights was "so flagrant, and the difficulty of proving prejudice so great" that prejudice may be presumed, Loaisiga, 104 F.3d at 488, but no court has applied that concept to the context of the failure to adjudicate an application for § 212(c) relief.

Individuals with particularly lengthy or violent criminal histories are generally required to show particularly strong countervailing equities or rehabilitation to obtain § 212(c) relief.[15] See Scott, 394 F.3d at 120-21. However, criminal history is not a per-se bar to relief.[16] See Lepore, 304 F. Supp. 2d at 199 ("It is important to remember that, by definition, 'aggravated felons' are eligible for relief, so the fact that [an applicant for § 212(c) relief] is a convicted criminal cannot be dispositive.").

---

[15]The BIA has explained that, "as the negative factors grow more serious, it becomes incumbent upon the alien to introduce additional offsetting favorable evidence, which in some cases may have to involve unusual or outstanding equities." Marin, 16 I. & N. Dec. at 585. A single criminal act, depending on the seriousness of the underlying conduct, or "a succession of criminal acts, which together establish a pattern of serious criminal misconduct" can trigger this heightened requirement. Matter of Buscemi, 19 I. & N. Dec. 628, 633 (BIA 1988). While evidence of rehabilitation is one factor often considered in this context, the BIA has indicated that an IJ must consider the circumstances faced by the applicant for § 212(c) relief, particularly the difficulties that incarceration may pose. See In re Arrequin De Rodriguez, 21 I. & N. Dec. 38, 40 (BIA 1995) ("A clear showing of reformation is not an absolute prerequisite to a favorable exercise of discretion in every section 212(c) application involving an alien with a criminal record. Section 212(c) applications involving convicted aliens must be evaluated on a case-by-case basis, with rehabilitation a factor to be considered in the exercise of discretion. . . . We recognize the difficulties an incarcerated alien faces in demonstrating convincing efforts towards rehabilitation. . . . [A]ny efforts will be considered, and the applicant is not barred automatically from discretionary relief by her incarceration." (citations omitted)).

[16]Indeed, we have noted that the grant of discretionary relief for individuals with criminal convictions "was not rare: in the years immediately preceding the [statutory repeal of § 212(c) relief for 'aggravated felons'], over half the applications were granted." Mattis v. Reno, 212 F.3d 31, 33 (1st Cir. 2000).

Furthermore, only criminal history that occurred prior to the challenged deportation hearing should be considered when assessing prejudice in the § 1326(d) context. See Scott, 394 F.3d at 118 ("[Section 1326(d)(3)]'s focus on the 'entry' of the order suggests a temporal limitation on the district court's inquiry. In other words, the statute itself indicates that . . . the only pertinent issue is whether entry of the deportation order . . . prejudiced [the defendant] -- regardless of [the defendant]'s potential deportability for some later crimes.").

Because of the multitude of factors involved in this inquiry, the "[r]esolution of the prejudice issue in the Section 1326(d)(3) context is somewhat akin to a trial within a trial. . . . The court must first obtain all of the facts relevant to the particular alien and then apply standards established under Section 212(c) to those facts . . . ." Copeland, 376 F.3d at 73-74.

In this case, the district court heard arguments on the motion to dismiss and considered the entire record.[17] The district court noted six factors that could weigh in favor of Luna's case, including that (1) over fifty percent of those who apply for § 212(c) relief are granted such relief; (2) defendants with felony records are eligible for § 212(c) waivers; (3) Luna was abused as a child for ten years, (4) most of Luna's family members, including

---

[17]The defendant, through counsel, did not request to submit any additional evidence in support of his prejudice argument.

-21-

his parents and five siblings, were present in the United States at the time of his deportation hearing; (5) Luna had an opportunity to rehabilitate himself in prison; and (6) Luna has lived in the United States for the majority of his life.

The district court then considered three factors weighing against Luna's case, including that (1) Luna returned to the United States in defiance of a court order (referencing Luna's first deportation hearing and reentry); (2) Luna admitted to convictions for grand larceny and assault (for the brutal assault of a twelve-year-old child) in his deportation hearings[18] and (3) Luna's lack of specific employment history. The court concluded that Luna failed to establish prejudice, noting that "[a]lthough Defendant recites several factors he believes support his application for section 212(c) relief, he falls short of convincing this Court that those favorable factors outweigh the adverse ones, especially Defendant's violent criminal history."

As a preliminary matter, we note that Luna's first deportation order and reentry should not factor into the prejudice analysis, given the agency's recognition of the "serious errors" made in his first deportation proceedings. The IJ in Luna's second deportation hearing was so troubled by the errors that he did not consider the first deportation hearing and reentry as grounds for

---

[18]Along with these convictions, Luna's criminal history prior to his second deportation includes convictions for possession of a stolen vehicle and burglary.

deportation.  Given this determination, it is unlikely that the IJ would have considered that reentry in an adjudication of Luna's § 212(c) application.

Putting aside that factor, however, we nonetheless agree with the district court's conclusion.  Luna has a serious criminal history, including numerous offenses and a violent crime against a child.  Although he asserts that he has had the opportunity to rehabilitate himself, he fails to specify any evidence of rehabilitation or good character.  Luna lacks a history of steady employment and points to no evidence of positive contributions to society.  Furthermore, although Luna's parents and siblings are in this country, Luna fails to describe his relationship with them and the extent of the hardship that they will face if he is deported. We have carefully considered the favorable equities that Luna does assert, particularly his lengthy residency here since infancy. However, on the balance, we conclude that there is no reasonable likelihood that the agency would have granted a waiver in his case. While none of the aforementioned factors, taken alone, would necessarily doom Luna's application, we conclude that his lengthy criminal history, the violent nature of his criminal activity, and the relative lack of positive equities eliminate any reasonable likelihood that he would have received a grant of relief.

Because Luna has failed to demonstrate prejudice under § 1326(d), the district court properly denied his motion to dismiss

the indictment for illegal reentry.  The decision of the district court is **<u>affirmed</u>**.

So ordered.