# United States Court of Appeals
## For the First Circuit

Nos. 13-2031
     13-2088

UNITED STATES OF AMERICA,

Appellee,

v.

LENNY FERNANDO SOTO-MATEO,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Kayatta, Selya and Dyk[*],
Circuit Judges.

Eduardo Masferrer, with whom Masferrer & Associates, P.C. was on brief, for appellant.
Randall E. Kromm, Assistant United States Attorney, with whom Carmen M. Ortiz, United States Attorney, was on brief, for appellee.

August 26, 2015

---

[*] Of the Federal Circuit, sitting by designation.

**SELYA, Circuit Judge.** This is a criminal case in which the appellant is challenging his conviction for illegal reentry into the United States as a previously removed alien. See 8 U.S.C. § 1326(a). The appeal turns on the validity of the underlying order of removal. The district court found that the appellant could not satisfy the criteria for mounting a collateral attack on that order and, thus, denied the appellant's motion to dismiss the indictment. The appellant now seeks to reverse the denial of his motion. After careful consideration, we affirm.

## I. BACKGROUND

Defendant-appellant Lenny Fernando Soto-Mateo, a citizen of the Dominican Republic, was admitted to the United States as a lawful permanent resident in 2000 at age 16. Some seven years later, a federal grand jury sitting in the District of Massachusetts charged the appellant with aggravated identity theft, see 18 U.S.C. § 1028A, making false statements in a passport application, see id. § 1542, and making a false claim of citizenship, see id. § 911. He pleaded guilty and was sentenced to serve a total of 25 months in prison.

In due course, the Department of Homeland Security (DHS) instituted removal proceedings against the appellant on the ground that he had been convicted of an aggravated felony. See 8 U.S.C. § 1101(a)(43)(G); see also id. § 1227(a)(2)(A)(iii) (authorizing removal of "[a]ny alien who is convicted of an aggravated felony").

The appellant received a notice concerning bond and custody indicating that he was subject to mandatory detention as a result of his conviction for an aggravated felony. A second custody notice advised him that he could "not request a review of [the custody] determination . . . because the Immigration and Nationality Act prohibit[ed] [his] release from custody." See id. § 1226(c)(1)(B) (mandating detention of aliens deportable under id. § 1227(a)(2)(A)(iii)).

The appellant acknowledged receipt of the removal and custody papers. He also completed a form entitled "Record of Sworn Statement," which began with a statement of rights printed in both English and Spanish. The enumerated rights included the right to consult an attorney. The form listed a number of questions aimed at determining the appellant's nationality, immigration status, and eligibility for asylum. The appellant expressly waived his right to a lawyer and answered all of the questions in writing. To a question asking whether he was willing to sign a stipulated request for removal and give up the right to appear before an immigration judge (IJ) before being removed, he answered in the affirmative.

Given his acknowledged willingness to stipulate to his removal, DHS provided the appellant with a form entitled "Stipulated Request for Order of Removal and Waiver of Hearing" (the Stipulation). See id. § 1229a(d); 8 C.F.R. § 1003.25(b).

The Stipulation was printed in both English and Spanish. By signing it, the appellant conceded removability based on the charges contained in the removal papers, confirmed that he was not applying for any form of relief from removal, and waived his right to a hearing before an IJ. At the same time, he "waive[d] [his] right to appeal the written decision for [his] removal." The Stipulation concluded with a declaration that the appellant "fully understand[s] [the Stipulation's] consequences" and "unequivocally state[s] that [he has] submitted this document voluntarily, knowingly, and intelligently."

On March 13, 2009, an IJ ordered the appellant removed. A few days later, the appellant wrote to an immigration officer whom he had met while in detention, imploring the officer to "try to speed up the process so I can leave soon to join my family." On April 17, 2009, the removal process was completed: the appellant departed Atlanta on a flight bound for the Dominican Republic.

Only a few months passed before a Border Patrol agent apprehended the appellant at a bus station in Louisiana. In short order, a federal grand jury sitting in the Western District of Louisiana charged the appellant with illegal reentry into the United States by a previously removed alien. See 8 U.S.C. § 1326(a), (b)(1). A guilty plea and a 15-month incarcerative sentence followed.

In January of 2011, the appellant was again removed to the Dominican Republic.[1] Undeterred, the appellant again entered the United States illegally and, in February of 2012, was apprehended in Massachusetts. The government once more charged him with illegal reentry. This time, the appellant moved to dismiss the indictment on the ground that his 2009 removal as an aggravated felon could not form the predicate for an illegal reentry charge since none of his underlying convictions was consistent with the aggravated felony designation. Specifically, he posited that aggravated identity theft was not a "theft offense" within the meaning of 8 U.S.C. § 1101(a)(43)(G) because it did not categorically involve a nonconsensual taking of a person's means of identification. See United States v. Ozuna-Cabrera, 663 F.3d 496, 500-01 (1st Cir. 2011).

The district court refused to dismiss the indictment. See United States v. Soto-Mateo, 948 F. Supp. 2d 77, 80 (D. Mass. 2013). It ruled that the appellant had not exhausted his administrative remedies and, thus, could not collaterally attack

---

[1] The government does not claim that the 2011 removal constitutes an independent predicate for the offense of conviction. Presumably, the government has refrained from such a claim because invalidity of the 2009 removal would undermine the 2011 removal. After all, the 2011 removal was undertaken pursuant to 8 U.S.C. § 1326 — a statute that applies only to an alien who "has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding . . . ."

the underlying removal order. See id. The appellant thereafter entered a conditional guilty plea, see Fed. R. Crim. P. 11(a)(2), preserving the right to appeal the district court's denial of his motion to dismiss. Following the imposition of a 21-month term of immurement, these appeals ensued.[2]

## II. ANALYSIS

A defendant facing a charge of illegal reentry after removal may, under some circumstances, challenge the validity of the underlying order of removal. See 8 U.S.C. § 1326(d); United States v. Luna, 436 F.3d 312, 317 (1st Cir. 2006). To wage such a collateral attack, he must demonstrate that

> (1) [he] exhausted any administrative remedies that may have been available to seek relief against the order;
>
> (2) the deportation proceedings at which the order was issued improperly deprived [him] of the opportunity for judicial review; and
>
> (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d). In reviewing a district court's determination as to whether a particular defendant has satisfied these requirements, we assay the district court's subsidiary factual

---

[2] The appellant initially filed a timely notice of appeal, mistakenly stating an intent to challenge his sentence. One day after the filing deadline had passed, see Fed. R. App. P. 4(b)(1)(A)(i), he filed — and the district court allowed — an unopposed motion to file a corrected notice of appeal challenging the denial of the motion to dismiss. We consolidated these two appeals for briefing and argument.

determinations for clear error, see United States v. DeLeon, 444 F.3d 41, 48 (1st Cir. 2006), and afford plenary review to its conclusions of law, see Luna, 436 F.3d at 316. Moreover, when "performing the collateral attack analysis under § 1326(d), [an inquiring] court ordinarily should address the initial test of exhaustion of administrative remedies before going on to the other two tests." DeLeon, 444 F.3d at 45. The elements of section 1326(d) are conjunctive, and an appellant must satisfy all of those elements in order to prevail on a collateral challenge to his removal order. See Luna, 436 F.3d at 317.

The appellant stumbles at the first step. He concedes that he did not exhaust available administrative remedies but, rather, waived his right to appeal the IJ's removal order to the Board of Immigration Appeals (BIA). A failure to take such an available administrative appeal is a failure to exhaust administrative remedies within the meaning of section 1326(d). See DeLeon, 444 F.3d at 50 & n.7. The appellant nonetheless strives to circumvent this failure by asserting that his waiver was neither knowing nor intelligent and, accordingly, he should be excused from the exhaustion requirement.

Several courts have recognized an exception to the exhaustion requirement for cases in which the alien's waiver of administrative review was not knowing and intelligent. See, e.g., Richardson v. United States, 558 F.3d 216, 219-20 (3d Cir. 2009);

United States v. Sosa, 387 F.3d 131, 136 (2d Cir. 2004); United States v. Martinez-Rocha, 337 F.3d 566, 569 (6th Cir. 2003); United States v. Muro-Inclan, 249 F.3d 1180, 1183 (9th Cir. 2001); see also United States v. Mendoza-Lopez, 481 U.S. 828, 840 (1987) (holding, prior to enactment of section 1326(d), that a person charged with illegal reentry has a constitutional right to collaterally attack the underlying removal order when a due process violation in a removal proceeding "amount[s] to a complete deprivation of judicial review"). We have reserved judgment on whether to recognize such an exception, see DeLeon, 444 F.3d at 51, and it is unnecessary for us to revisit that reservation today. Assuming without deciding that due process concerns sometimes may warrant an exception to the statutory exhaustion requirement, the appellant's case would not qualify for such an exception. We explain briefly.

To begin, section 1326(d) places the burden on the defendant to "demonstrate[]" an entitlement to relief. Richardson, 558 F.3d at 222 & n.5; see also Luna, 436 F.3d at 317 ("[A] defendant must satisfy all of [the statutory elements] to successfully attack his removal order."). We think it follows that a defendant bears the burden of proving his eligibility for any exception to the statutory requirements. See United States v. Baptist, 759 F.3d 690, 694-95 (7th Cir. 2014); Richardson, 558 F.3d at 222; United States v. Rangel de Aguilar, 308 F.3d 1134,

1137 (10th Cir. 2002).[3] We hold, therefore, that — at least where, as here, the government produces a written and signed waiver of rights — the defendant must carry the burden of showing that the waiver was infirm.

The appellant has not come close to carrying this burden. He was expressly informed, in writing and in a language he understands, about his right to appeal; and he unequivocally relinquished that right by signing the Stipulation.[4] By the same token, he freely accepted the proposition that the IJ's decision would be "a final disposition of the[] removal proceedings." He does not claim illiteracy, nor does he limn any plausible basis for believing that he was pressured into surrendering his rights. To the precise contrary, his unsolicited letter to the immigration officer attests to his eagerness to "speed up the process" and be deported as quickly as possible. On this record, then, the district court had ample support for its conclusion that the appellant's written waiver of the right to appeal his removal order was knowing and intelligent. See Soto-Mateo, 948 F. Supp. 2d at

---

[3] At least one court has allocated the burden of proof differently. See United States v. Ramos, 623 F.3d 672, 680 (9th Cir. 2010). We discuss the Ramos case in more detail infra.

[4] In this regard, we note that the appellant did not proffer any evidence to the district court, in the form of an affidavit or otherwise, suggesting that he did not fully understand either the Stipulation or the attendant waiver of appeal.

80; see also DeLeon, 444 F.3d at 51; Martinez-Rocha, 337 F.3d at 569.

The fact that the appellant was not represented by counsel during the removal proceedings does not, without more, alter this calculus. The statute providing for stipulated removal explicitly contemplates that aliens may act pro se. See 8 U.S.C. § 1229a(d). So, too, the relevant regulations provide that an IJ may enter a stipulated order of removal against an unrepresented alien "without a hearing and in the absence of the parties," as long as the IJ "determine[s] that the alien's waiver is voluntary, knowing, and intelligent." 8 C.F.R. § 1003.25(b). In the case at hand, the IJ made just such a determination, consistent with the appellant's affirmation that he fully understood the consequences of the Stipulation and had signed it "voluntarily, knowingly, and intelligently."

The appellant demurs, relying chiefly on the Ninth Circuit's decision in United States v. Ramos, 623 F.3d 672 (9th Cir. 2010). See supra note 3. In that case, the Ninth Circuit excused the exhaustion requirement for an alien who had acted pro se in stipulated removal proceedings. See 623 F.3d at 682. The appellant reads Ramos through rose-colored glasses, suggesting that the case stands for the proposition that an IJ's failure to hold a hearing and personally to inform an unrepresented alien of the full compendium of his rights is itself a due process

- 10 -

violation.  But that aspect of Ramos stems from the Ninth Circuit's assignment of the burden of proof to the government, which required the government to establish by "'clear and convincing evidence' that [the appellant] received adequate advisement of the consequences of his waiver of appeal."  See id. at 681 (quoting United States v. Pallares-Galan, 359 F.3d 1088, 1097 (9th Cir. 2004)).  This is not where the burden of proof belongs.  See supra at 8-9 (citing cases).  Where, as here, the government has produced a written and signed waiver, the Ninth Circuit's allocation of the burden of proof is a minority view and untenable.[5]

At any rate, Ramos is distinguishable.  The decision there turned less on the lack of an attorney and more on the lack of a "competent translation" of the waiver.  Ramos, 623 F.3d at 680.  The alien (a Spanish speaker) had been asked to sign a removal stipulation by an immigration officer who spoke only "broken" Spanish, and that officer could not confirm that the alien understood what he was signing.  Id. at 681.

---

[5] The Ramos court's determination that "[t]he government bears the burden of proving valid waiver in a collateral attack of the underlying removal proceedings," 623 F.3d at 680, appears to be based on a misreading of United States v. Lopez-Vasquez, 1 F.3d 751 (9th Cir. 1993).  While the Lopez-Vasquez court allocated the burden of proof to the government, the government proffered no written, signed waiver.  Instead, the appellant, along with a number of other aliens, had silently "waived" his right to appeal at a group hearing.  Id. at 754-55.

Here, in contrast, there was no language barrier and the appellant plainly knew what he was doing. What is more, the trappings of fundamental fairness were present in abundance. The record indicates that the appellant was twice informed, in his native language, of his right to retain an attorney and was provided a list of organizations offering free legal assistance. He nonetheless elected to go it alone and proceed pro se. He does not suggest that he wanted an attorney but was unable either to find one or to afford one. The short of it is that the record here — unlike in Ramos — contains no hint of any cogent reason to doubt the validity of the Stipulation. In the absence of anything that might independently prompt due process concerns, the mere fact that the appellant appeared pro se does not invalidate the voluntary, knowing, and intelligent waiver of his rights. See Baptist, 759 F.3d at 697; cf. Response to Comment on Proposed Rule on Conduct of Removal Proceedings, 62 Fed. Reg. 10,312, 10,322 (Mar. 6, 1997) (explaining that requirement that IJ make a finding of voluntariness "safeguards against an imprudent waiver of a formal adjudication on the part of an unrepresented alien" and that "[i]f an immigration judge is confronted with a stipulated request raising due process concerns, he or she may examine that request in the context of a hearing").

The appellant also argues that the removal papers and custody notices led him to believe (incorrectly) that he was

removable as an aggravated felon and, thus, statutorily ineligible for cancellation of removal. Building on this premise, he submits that "it is inconceivable that [he] would have made a considered and intelligent stipulation and waiver of his right to appeal if he had known that he was not removable as an aggravated felon and eligible for cancellation of removal." Appellant's Br. at 27.

There are at least three things wrong with this argument. First, it suffers from a basic infirmity. An alien may be deported as an aggravated felon if he is convicted of a crime that involves every element of an offense enumerated in 8 U.S.C. § 1101(a)(43). See Conteh v. Gonzales, 461 F.3d 45, 55 (1st Cir. 2006). At the time of the appellant's removal in 2009, the BIA had construed "theft offense," as used in 8 U.S.C. § 1101(a)(43)(G), to require a nonconsensual taking of or exercise of control over another's property. See Matter of Garcia-Madruga, 24 I&N Dec. 436, 440 (BIA 2008). However, in 2011 — after the appellant's removal — this court concluded that a conviction for aggravated identity theft under 18 U.S.C. § 1028A can be sustained even where there is no "theft" — in other words, even where the owner consents to the use of the means of identification. See Ozuna-Cabrera, 663 F.3d at 500-01. This holding was not a foregone conclusion, and the issue has since engendered a circuit split. Compare id. with United States v. Spears, 729 F.3d 753, 756-58 (7th Cir. 2013) (en banc). The appellant argues, in effect, that the decision in Ozuna-Cabrera

means that his conviction for aggravated identity theft in 2009 was not a "theft" offense; that he was therefore not an aggravated felon in 2009 under 8 U.S.C. § 1101(a)(43)(G); and, consequently, that DHS misled him.

We do not agree. Since the law governing the classification of aggravated identity theft was unsettled at the time of the appellant's removal, we cannot fairly conclude that the appellant was misled at all. A waiver of rights based on a reasonable interpretation of existing law is not rendered faulty by later jurisprudential developments. See Brady v. United States, 397 U.S. 742, 757 (1970); see also Baptist, 759 F.3d at 698 (explaining that "the law in effect at the time of [the defendant's] challenged removal is what matters to [the court's] analysis"); cf. Ovalles v. Holder, 577 F.3d 288, 299 (5th Cir. 2009) (per curiam) (finding no due process violation in BIA's refusal to entertain a motion to reopen removal proceedings even though offense underlying removal was later determined not to be an aggravated felony).

Second, even if the appellant's prior convictions did not comprise aggravated felonies, he would not have been entitled as of right to remain in the United States. This is important because "a majority of circuits have rejected the proposition that there is a constitutional right to be informed of eligibility for — or to be considered for — discretionary relief." United States

v. Santiago-Ochoa, 447 F.3d 1015, 1020 (7th Cir. 2006) (citing representative cases). Today, we join that majority.

Third, and finally, it is entirely conceivable that the appellant would have opted for speedy deportation in lieu of the long-shot chance of obtaining discretionary relief from removal after a protracted legal battle. See Richardson, 558 F.3d at 223; see also INS v. Rios-Pineda, 471 U.S. 444, 446 (1985) (noting Attorney General's authority to refuse to suspend deportation even where alien meets threshold statutory requirements). Indeed, the appellant's unsolicited request to speed up the removal process is some indication that he had no stomach for deportation proceedings (during which he was likely to have been detained).

For all of these reasons, we conclude that the appellant's waiver of appeal was voluntary, knowing, and intelligent; that he was not misled in any material respect; that no due process violation occurred; and that, therefore, his waiver must be given effect. This means, of course, that the appellant did not exhaust his administrative remedies in connection with the underlying removal and, thus, could not collaterally attack that removal in his criminal case.

We add a coda. Given the appellant's failure to exhaust administrative remedies as required by section 1326(d)(1), we need not reach the question of whether he satisfied either the judicial review requirement of section 1326(d)(2) or the fundamental

fairness requirement of section 1326(d)(3).  See Luna, 436 F.3d at 317.  It is worth noting, however, that the appellant's collateral attack surely would fail under section 1326(d)(3).  After all, that provision requires a showing of prejudice, see id. at 319; DeLeon, 444 F.3d at 49, and such a showing entails "a reasonable likelihood that the result would have been different if the error in the deportation proceeding had not occurred."  Luna, 436 F.3d at 321 (quoting United States v. Loaisiga, 104 F.3d 484, 487 (1st Cir. 1997)).  For essentially the reasons previously discussed, the appellant plainly cannot satisfy this standard.

## III.  CONCLUSION

We need go no further.  The district court's order denying the appellant's motion to dismiss his indictment is


**Affirmed**.