

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-1-2006

# USA v. Charleswell

Precedential or Non-Precedential: Precedential

Docket No. 04-4513

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Charleswell" (2006). *2006 Decisions.* Paper 544.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/544

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 04-4513
_____

UNITED STATES OF AMERICA

v.

RIEL CHARLESWELL,

Appellant


_____

APPEAL FROM THE DISTRICT COURT
OF THE VIRGIN ISLANDS
(D.C. No. 02-cr-00158)
District Judge:  The Honorable Thomas K. Moore
_____

ARGUED DECEMBER 6, 2005

BEFORE: SCIRICA, <u>Chief Judge</u>,
McKee and Nygaard, <u>Circuit</u> <u>Judges</u>.

(Filed August 1, 2006)
_____

Stephen A. Brusch, Esq. (Argued)
International Plaza, Suite 2G
P. O. Box 988
Charlotte Amalie, St. Thomas USVI 00804
     Counsel for Appellant


Kim L. Chisholm, Esq. (Argued)
Office of the United States Attorney
5500 Veterans Building, Suite 260
Charlotte Amalie, St. Thomas, USVI 00802-6924
     Counsel for Appellee

_____

OPINION OF THE COURT
_____


NYGAARD, Circuit Judge.

Riel Charleswell appeals from his conviction for re-entering the United States without permission after having been previously deported, in violation of 8 U.S.C. §§ 1326(a) and (b)(2). The District Court rejected Charleswell's collateral challenge to the validity of both his original 1991 Deportation

2

order and his 2001 Reinstatement order, concluding that Charleswell was not denied the opportunity for judicial review in both instances. We hold that Charleswell was denied the opportunity for judicial review of the 2001 Reinstatement order and that the reinstatement proceeding, if prejudicial, was fundamentally unfair. Accordingly, we will vacate Charleswell's conviction and remand to the District Court for findings on whether Charleswell can demonstrate prejudice.

## I. Background

Charleswell was born in the British Virgin Islands but became a permanent resident of the United States in 1967, when he was three years old. In 1987, Charleswell was convicted in a Maryland state court for possession with intent to distribute marijuana and, based on that conviction, the Immigration and Naturalization Service commenced deportation proceedings against him ("1991 Deportation"). At his deportation hearing,

3

Charleswell conceded that he was deportable but sought waiver pursuant to section 212(c) of the Immigration and Naturalization Act ("INA"), 8 U.S.C. § 1182(c) (1995) (repealed by Illegal Immigrant Reform and Immigrant Responsibility Act (IIRIRA), Pub. L. No. 104-208, Div. C, § 304(b), 1996 U.S.C.C.A.N. (110 Stat.) 3009-597). Section 212(c) permits the Attorney General discretion to waive deportation of a removable alien who had established a continuous, lawful domicile in the United States for seven years. *See INS v. St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271, 150 L. Ed. 2d 347 (2001). It is undisputed that Charleswell had established a continuous, lawful domicile in the United States for seven years. In distressing fashion, however, the Immigration Judge denied Charleswell's request for a section 212(c) waiver because he believed that the United States Virgin Islands, specifically St. Thomas, was not a territory of the United States. The IJ's mistaken belief led him to find

4

Charleswell deportable to the British Virgin Islands. Despite the adverse finding, Charleswell did not appeal this decision and, on July 9, 1992, Charleswell was deported to the British Virgin Islands.

In 1997, Charleswell was again found and arrested in Maryland. He was charged with re-entering the United States after deportation and being a felon in possession of a firearm in violation of 8 U.S.C. § 1326. Charleswell moved to dismiss the indictment on the ground that his previous deportation was fundamentally unfair. The District Court dismissed this motion and, after a conditional plea of guilty, sentenced Charleswell to 49 months in prison. The Court of Appeals for the Fourth Circuit affirmed the District Court's judgment. *See United States v. Charleswell*, 173 F.3d 425 (4th Cir. 1999). On November 28, 2000, the INS issued a Notice of Intent to Reinstate Charleswell's 1991 Deportation. Pursuant to the

Notice of Intent, Charleswell was deported again in 2001 ("2001 Reinstatement").

In 2002, Charleswell was again found in the United States, this time in St. Thomas, and he was charged in the District Court for the United States Virgin Islands with re-entry after deportation in violation of 8 U.S.C. §§ 1326(a) and (b)(2).[1]

---

[1] § 1326(a) provides, in relevant part:

In general

Subject to subsection (b) of this section, any alien who –

(1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter

(2) enters, attempts to enter, or is at any time found in, the United States[] . . . with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under the chapter or any prior Act, shall be fined under Title 18, or imprisoned not more than 2 years, or both.

§ 1326(b)(2) provides:

Notwithstanding subsection (a) of this section, in the case of any alien described in such subsection –

(2) whose removal was subsequent to a conviction for

(continued...)

6

Charleswell filed a Motion to Dismiss, arguing that the 1991 Deportation and the 2001 Reinstatement, upon which the indictment was based, were fundamentally unfair and invalid. The District Court denied this motion, finding that Charleswell was not denied judicial review of the 1991 Deportation order or the 2001 Reinstatement. The government moved to preclude Charleswell from challenging the lawfulness of his prior deportations at trial, which the District Court granted and the matter proceeded to trial. On January 26, 2004, a jury returned a guilty verdict and the District Court sentenced Charleswell to 57 months in prison. This timely appeal follows.

## II.

---

[1.](...continued)

    commission of an aggravated felony, such alien shall be fined under such Title, imprisoned not more than 20 years, or both[.]

We have jurisdiction over the appeal from the final judgment of the District Court pursuant to 28 U.S.C. § 1291. We review the District Court's determination precluding Charleswell from collaterally attacking his deportation *de novo*. *United States v. Torres*, 383 F.3d 92, 95 (3d Cir. 2004). We also review the District Court's factual findings for clear error and we have plenary review over its decisions of law. *United States v. Perez*, 280 F.3d 318, 336 (3d Cir. 2002), *cert. denied*, 537 U.S. 859, 123 S.Ct. 231, 153 L.Ed.2d 98 (2002).

## III. Discussion

Fundamental precepts of due process provide an alien subject to illegal re-entry prosecution under 8 U.S.C. § 1326 with the opportunity to challenge the underlying removal order under certain circumstances. *See Torres*, 383 F.3d at 98. Interpreting the Supreme Court's pronouncement in *United States v. Mendoza-Lopez*, 481 U.S. 828, 107 S.Ct. 2148, 95 L.

8

Ed. 2d 772 (1987), we have formulated three distinct but compulsory requirements that must be met by any alien wishing to collaterally attack a previous deportation order or proceeding. The alien must establish that (1) he exhausted any administrative remedies that may have been available; (2) the hearing effectively eliminated the right of the alien to obtain judicial review from that proceeding; and (3) the prior hearing was "fundamentally unfair". *Torres*, 383 F.3d at 98-99; *see also United States v. Luna*, 436 F.3d 312 (1st Cir. 2006); *United States v. Lara-Aceves*, 183 F.3d 1007, 1010 (9th Cir. 1999); *United States v. Wittgenstein*, 163 F.3d 1164, 1170 (10th Cir. 1998); *United States v. Paredes-Batista*, 140 F.3d 367, 378 (2d Cir.), *cert. denied*, 525 U.S. 859, 119 S.Ct. 143, 142 L.Ed.2d 116 (1998); *United States v. Perez-Ponce*, 62 F.3d 1120, 1122 (8th Cir. 1995); *United States v. Espinoza-Farlo*, 34 F.3d 469, 471 (7th Cir. 1994). Congress recognized the weight of the

9

Court's formulation in *Mendoza-Lopez* and, in 1996, enacted 8 U.S.C. § 1326(d) which codified these requirements.[2]

### A. Jurisdiction over the 1991 Deportation

The bulk of Charleswell's appeal hinges on his effort to collaterally attack both the 1991 Deportation and the 2001 Reinstatement. Before turning to the substance of these collateral challenges, however, we must first address some confusion over which order constitutes the predicate element of

---

[2] § 1326(d) states:

> In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in subsection (a)(1) or subsection (b) of this section unless the alien demonstrates that–
>> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
>> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
>> (3) the entry of the order was fundamentally unfair.

Charleswell's § 1326 conviction.[3] The government argues that we lack jurisdiction to review the 1991 Deportation, signaling its belief that Charleswell's conviction is premised solely on the 2001 Reinstatement and, consequently, that Charleswell is precluded from a collateral challenge to the original 1991 Deportation. Reading the indictment, it might seem that the government is correct, as it invokes only the 2001 Reinstatement as the underlying "deportation order" required for a § 1326 charge. However, *Mendoza-Lopez* did not constrict collateral challenges in the way that the government advocates and we do not agree that, for purposes of a collateral challenge, we are

---

[3] In most cases involving a collateral challenge to an illegal re-entry charge the underlying predicate element is the actual deportation proceeding. *See e.g., Mendoza-Lopez*, 481 U.S. at 828; *Torres*, 383 F.3d at 92. Challenges to an illegal re-entry charge stemming from a reinstatement order represent a relatively new iteration in the *Mendoza-Lopez* collateral challenge context and the exact contours of these second wave challenges have yet to be fully defined.

11

limited to reviewing only the 2001 Reinstatement. Rather, under *Mendoza-Lopez*, an alien may mount, and we must hear, a challenge to the validity of both a reinstatement order and the original deportation or removal order. *See generally United States v. Luna*, 436 F.3d 312 (1st Cir. 2006) (discussing, but not deciding, which of two deportation orders could act as a basis for an illegal re-entry indictment); *Ramirez-Molina v. Ziglar*, 436 F.3d 508 (5th Cir. 2006) (concluding that on direct appeal from a reinstatement order the court retained the power to hear constitutional and legal challenges to the underlying deportation order). To hold otherwise would allow the government to avoid the consequences of a fundamentally unfair underlying deportation or removal proceeding simply by deleting it from the indictment, in contravention of the teaching in *Mendoza-Lopez* that "where a determination made in an administrative proceeding is to play *a critical role* in the subsequent imposition

12

of a criminal sanction, there must be *some* meaningful review of the administrative proceeding." *Mendoza-Lopez*, 482 U.S. at 837-38 (first emphasis added). Reinstatement orders do not exist independent and separate from their prior orders of removal but are instead explicitly premised on the prior order. *See* 8 U.S.C. § 1231(a)(5); *Ramirez-Molina*, 436 F.3d at 514. Consequently, the prior order remains a critical element of the reinstatement and, more importantly, of the illegal re-entry charge where that charge is premised on the reinstatement. Thus, insofar as the underlying element of the § 1326 proceeding is the reinstatement order, an alien may attempt to collaterally challenge both the original deportation order and the reinstatement order. And, where either proceeding – the reinstatement or the original – is so procedurally flawed that it "effectively eliminated the right of the alien to obtain judicial

13

review," we may invalidate the criminal charges stemming therefrom.[4]  *See Mendoza-Lopez*, at 839.

## B. Sufficiency of the Collateral Challenge to the 1991 Deportation

Having determined that we may review Charleswell's attempt to collaterally challenge the 1991 Deportation order, we next address whether he is able to meet the *Mendoza-Lopez* requirements.  We conclude he cannot.  Charleswell is unable to

---

[4.]Any claim that we are statutorily prohibited from entertaining a collateral challenge to the original deportation order is equally unavailing. *But cf. United States v. Avila-Macias*, 328 F.3d 108, 115 (3d Cir. 2003) (concluding on direct appeal that we did not have jurisdiction over a collateral challenge to the initial deportation order where that order was reinstated pursuant to section 305(a)(5) [8 U.S.C. § 1231(a)(5)]).  Any conceivable statutory bar (e.g., § 1231(a)(5)) focuses on the actual reinstatement and any direct appeal from the reinstatement order itself. *See id*.; *Ramirez-Molina*, 436 F.3d at 514.  We can find no support for the contention that a statute, like § 1231(a)(5), withdrawing jurisdiction over the original deportation order reaches collateral challenges to a criminal charge for illegal re-entry.  Serious constitutional concerns would arise if this were the case. *See Mendoza-Lopez*, 481 U.S. at 837-38; *Torres*, 383 F.3d at 100.

demonstrate that he was deprived of the opportunity for judicial review after the IJ's plainly adverse order deporting him. The record reveals that, despite the "monumental error" made by the IJ during the hearing, Charleswell had the opportunity to appeal the deportation order.[5] Charleswell seeks to excuse his decision not to appeal by arguing that "[t]he [Immigration J]udge then orally stated that he is deporting Charleswell to the [United States] Virgin Islands. Having lived in St. Thomas for most of his life, having had family in St. Thomas, Charleswell saw no reason to appeal." We are unpersuaded by this claim. A review of the IJ's decision reveals that Charleswell designated the British Virgin Islands as the country for deportation, indicating that he was aware of the effect of the deportation order.

---

[5.]As noted earlier, the IJ, incredibly, believed that the United States Virgin Islands were not a territory of the United States and this obviously incorrect supposition led him, in part, to order Charleswell deported.

Moreover, the IJ's deportation order states: "IT IS FURTHER ORDERED, that the Respondent [Charleswell] be deported from the United States to the *British Virgin Islands* under the charge and the order to show cause." App. at 56 (emphasis added). The IJ's decision is, therefore, unambiguous: Charleswell was ordered to be deported to the British Virgin Islands. There is no indication whatsoever that Charleswell was effectively precluded from appealing this clearly adverse decision. He was told he had the right to appeal and does not claim that he failed to understand that right. Furthermore, as the Court of Appeals for the Fourth Circuit noted when it handled Charleswell's prior appeal, "the immigration judge simply made a substantive error of law–albeit an egregious one–of precisely the sort that could have been corrected on appeal." App. at 46. Accordingly, because Charleswell is unable to demonstrate he was effectively denied the right to obtain judicial review from

16

1991 Deportation proceeding, he fails to satisfy the *Mendoza-Lopez* requirements and may not collaterally challenge the 1991 Deportation order.

## C. Jurisdiction over the 2001 Reinstatement

We must next address the government's contention that we lack jurisdiction to review Charleswell's effort to collaterally challenge the 2001 Reinstatement order. The government points to Immigration and Nationality Act ("INA") § 242(a)-(b), 8 U.S.C. § 1252(a)-(b) (2002) as the authority to which we should look in determining whether we possess jurisdiction over the 2001 Reinstatement order. Section 242(a)-(b) of the INA grants the courts of appeals subject matter jurisdiction over "final orders of removal." And although "a reinstatement order is not literally an "order of removal" because it merely reinstates a previously issued order of removal or deportation[]" we consider it a final order of the INS and it therefore falls within

17

section 242's jurisdictional grant. *Ojeda-Terrazas*, 290 F.3d 292, 295 (5th Cir. 2002) ("A fair interpretation of § 242 grants this court the authority to review the lawfulness of the reinstatement order."). Thus, according to the government, because the 2001 Reinstatement was effectuated in Maryland, the Court of Appeals for the Fourth Circuit is the only court that has jurisdiction over the 2001 Reinstatement order. Again, we disagree.

In *Ojeda-Torrazas*, the Court of Appeals for the Fifth Circuit addressed the jurisdictional grant in the context of a direct appeal from the alien's reinstatement order. There, the INS apprehended the alien after he had already been deported and served him with a Notice of Intent to reinstate the original deportation order. From that Notice of Intent, the alien filed a petition for review directly to the Court of Appeals for the Fifth Circuit, the proper court of appeal in which to contest the

18

lawfulness of his reinstatement order. We agree with the government that if Charleswell had directly appealed the 2001 Reinstatement order, section 242(a)-(b) would control and we would not possess subject matter jurisdiction because the reinstatement order was issued in Maryland, outside of our jurisdictional control.

Here, however, Charleswell is not directly appealing the 2001 Reinstatement order, but is instead attempting to collaterally attack it. Because this is not a direct appeal, section 242(a)-(b) is inapplicable. Where, as here, a criminal prosecution is based upon an underlying deportation order, an alien may attempt to collaterally challenge that order in the court in which the prosecution takes place. *Torres*, 383 F.3d at 97 (assuming jurisdiction to review the sufficiency of a collateral challenge to a removal order constituting an element of a conviction for illegal reentry."); *see Mendoza-Lopez*, 481 U.S.

19

at 839 ("[A] collateral challenge to the use of a deportation proceeding as an element of a criminal offense must be permitted where the deportation proceeding effectively eliminates the right of the alien to obtain judicial review."). Consequently, we have subject matter jurisdiction to assess the sufficiency of Charleswell's attempted collateral attack because we have jurisdiction over the District Court for the United States Virgin Islands. *See* 28 U.S.C. § 1291.

## D. Sufficiency of the Collateral Challenge to the 2001 Reinstatement

Turning to the sufficiency of Charleswell's collateral challenge, Charleswell specifically argues that "[t]he 2001 reinstatement of the deportation order also violated [his] rights because he was never informed of his right to appeal to a federal court of appeals, and the 'reinstatement statute' ought not be applied retroactively to [his] conduct." As noted earlier, the

20

District Court analyzed only the first two *Mendoza-Lopez* requirements, concluding that, although Charleswell did satisfy the first requirement of exhaustion of administrative remedies ("First . . . there were no practicable administrative remedies that Charleswell could have exhausted"), he could not establish that he was denied judicial review of the reinstatement order.[6] As set out below, we conclude that Charleswell was denied the opportunity of judicial review of the reinstatement order and, additionally, that the proceeding, if prejudicial, was fundamentally unfair.

### 1. Opportunity for Judicial Review

In concluding that Charleswell could not meet the second requirement, the District Court noted that 8 U.S.C. § 1252(a)(1) conferred appellate jurisdiction over reinstatement orders to

---

[6.]The government concedes, and we agree, that the District Court was correct in concluding that Charleswell had met the first requirement.  *See* 8 U.S.C. § 1231(a)(5).

21

federal courts of appeal and that "Charleswell has provided no evidence to this Court that he was denied access to judicial review, either through a direct appeal from the reinstatement order or a petition for habeas relief." Therefore, according to the District Court, because judicial review was available in some form and Charleswell could offer no reason why he did not appeal, he could not meet the second prong.

It is certainly true that there is a statute conferring appellate jurisdiction on the courts of appeal over reinstatement orders and it is also correct that Charleswell did not directly appeal the reinstatement order. However, it is *not* the case that Charleswell failed to offer any evidence that he was denied access to judicial review. Charleswell contends that his failure to appeal stems from the fact that he "appeared"[7] *pro se* at the

---

[7.]As discussed below, the reinstatement proceeding is less a proceeding and more a summary procedure, requiring the alien
(continued...)

time of the reinstatement order and that he was never informed

he could appeal the reinstatement order to the federal courts of

appeal. ("The government summarily deported Charleswell

from the United States with . . . no notification of the right of

judicial review . . . ."). This is important because while what

constitutes an "effective denial of judicial review" has not been

definitively determined,[8] in *Mendoza-Lopez,* the Court held that

an IJ's failure to adequately explain to the alien that he had the

---

[7.](...continued)
to literally appear but beyond that denying him certain opportunities which are usually associated with traditional legal proceedings.

[8.]In *Torres*, we left the question open, stating:

> At any rate, we need not conclusively resolve what suffices to constitute judicial review under section 1326(d). Torres's collateral challenge suffers from a more obvious defect - he cannot establish that his removal order was "fundamentally unfair" as required by section 1326(d)(3). We will therefore assume, *arguendo*, that Torres was denied a meaningful opportunity for judicial review.

*Torres*, 383 F.3d at 102-03.

23

opportunity to appeal, which then resulted in an uninformed waiver of that right, "was an error that deprived the individuals in that case of their opportunity for judicial review." *Luna*, 436 F.3d at 319. In other words, in *Mendoza-Lopez*, the Court ruled that a collateral attack "could be made by aliens who had effectively been denied direct appeal because they were not given proper notice of the right to appeal." *United States v. Fares*, 978 F.2d 52, 56 (2d Cir. 1992). According to Charleswell, the failure to inform him of his right to take direct appeal of the reinstatement order denied him the opportunity for meaningful judicial review.

The right to "proper notice" and the somewhat more capacious right to notice, generally, of the availability of judicial review, however, are not necessarily coextensive in their constitutional or *Mendoza-Lopez* collateral challenge implications. For instance, the Court of Appeals for the Second

24

Circuit recently declined to find that an alien has a right to notice of the availability of judicial review over a deportation hearing. *United States v. Lopez*, __ F.3d __, 2006 WL 853261 (2d Cir. 2006). There, an IJ informed the alien of his right to BIA review but neglected to inform him of the availability of habeas review. *Id*. at *4. The court rejected his claim that this lack of notice established that he was denied the opportunity for meaningful review because "the receipt of a final order of deportation ordinarily would put an alien on notice to look for remedies for that order" and "where judicial remedies are readily available in case law and statutes, due process is not offended where no notice of those remedies is provided." *Id*. Under this reading, *Mendoza-Lopez* will not support a collateral challenge where the only claimed defect is the failure to inform the alien of his right to appeal. *Id*. ("Nothing in *Mendoza-Lopez* . . . requires a right to notice about the availability of judicial

25

review.").[9]  We need not now decide whether the mere lack of notice concerning the right to take a direct appeal from an administrative order can ever be considered an effective denial of meaningful judicial review because we consider the defect in this case to be considerably more significant.

_____

[9.]We express no opinion on the sufficiency of this logic except to note that this appears to us to be an open question both in how we construe *Mendoza-Lopez* and in how we read the  procedural protections that are necessary in the context of removal proceedings.  *See Martinez-de Bojorquez v. Ashcroft*, 365 F.3d 800, 804 (9th Cir. 2004) (taking as settled law that due process violations occur "when the BIA fail[s] to inform aliens appealing adverse decisions . . . about certain requirements they must meet when filing their appeal"); *see also United States v. Copeland*, 376 F.3d 61, 67 (2d Cir. 2004) ("An alien is denied [the opportunity for judicial review], for example, if the IJ does not adequately inform him of his right to a direct appeal from a deportation order.") (citing *Mendoza-Lopez*, 481 U.S. at 840). Additionally, we note that *United States v. Lopez* addresses the right of notice to appeal in the habeas context as opposed to the right of notice to take a direct appeal.  *See Torres*, 383 F.3d at 100-03.

26

The reinstatement procedures, as established by INA §

241(a)(5), 8 U.S.C. § 1231(a)(5), and 8 C.F.R. § 241.8, are quite

summary.[10]   No hearing is associated with the reinstatement

order and the alien is not entitled to appear before an IJ.  Instead,

the alien is served with a single piece of paper titled "Notice of

Intent/Decision to Reinstate Prior Order."   An immigration

officer is required to ascertain three facts: (1) whether the alien

---

[10.]Although these procedures have generally been upheld against due process challenges, they continue to cause a significant amount of consternation. *See Salazar v. Ashcroft*, 38 Fed. Appx. 812, 814 (3d Cir. 2002) ("[I]t is an open question whether the INS regulation providing for reinstatement of a prior removal order without a hearing could violate due process rights.") (comparing *Castro-Cortez*, 236 F.3d at 1040, with *Alvarenga Villabolos v. Ashcroft*, 271 F.3d 1169, 1174 (9th Cir. 2001)); *Lattab v. Ashcroft*, 384 F.3d 8, 21 n. 6 (1st Cir. 2004) ("The summary reinstatement process offers virtually no procedural protections.  The regulation grants aliens to whom it applies nothing more than a chance to make a statement opposing reinstatement to an immigrations officer (not to a judge).  It guarantees the alien no notice before reinstatement of a prior deportation order, affords him no real opportunity to contest the facts underlying the reinstatement, and contemplates no presentation of evidence.").

27

is subject to a prior order of deportation, exclusion, or removal; (2) whether the alien has been correctly identified; and (3) whether the alien has illegally reentered the United States. Additionally, the officer must communicate to the alien that he has a "right to make a written or oral statement contesting th[e] determination." If the alien wishes, he may make a statement contesting the determination and then check the box stating that he made the statement. Nowhere on the Notice of Intent form is there a statement alerting the alien that he may seek judicial review, pursuant to § 1252(a)(5), in the federal courts of appeals. The corresponding regulations, 8 C.F.R. § 241.8, likewise fail to require that an alien be given notice that he has a right to appeal. Moreover, the alien is usually deported immediately, precluding any real attempt to obtain judicial review unless that alien has counsel immediately available to secure an emergency stay of removal. *See Castro-Cortez v. INS*,

239 F.3d 1037, 1040-43 (9th Cir. 2000). But most importantly,

for our purposes, the Notice of Intent form states:

> In accordance with Section 241(a)(5) of the Act, you are removable as an alien who has illegally reentered the United States after having been previously removed or departed voluntarily while under an order of exclusion, deportation or removal and are therefore subject to removal by reinstatement of the prior order. *You may contest this determination by making a written or oral statement to an immigration officer. You do not have a right to a hearing before an immigration judge.* (Emphasis added).

This language is misleading. We are persuaded that reasonable

persons reading this Notice would be led to believe that their

only avenue for relief if they desire to contest the reinstatement

order would be to make either a written or oral statement to the

immigration officer. The presence of an affirmative statement

concerning an avenue of relief ("You may contest this

determination by . . .") immediately followed by a negative

command concerning what the alien may not do, creates the

29

impression that "these are the options." Absent any affirmative notice to the contrary, and combined with the velocity of the reinstatement process, it is simply unrealistic to expect an alien to recognize, understand and pursue his statutory right, pursuant to § 1252(a)(5), to direct judicial review in the appropriate court of appeals.

We therefore find analogous the line of cases beginning with *Copeland* establishing that where an alien is misled to believe that he has no opportunity for judicial review, the lack of an affirmative notice of the right to an appeal may combine to constitute a denial of the meaningful opportunity for judicial review, satisfying both § 1326(d)(2) and *Mendoza-Lopez. United States v. Copeland*, 376 F.3d 61, 68-69 (2d Cir. 2004); *see Lopez*, __ F.3d at __; *United State v. Calderon*, 391 F.3d 370, 375-76 (2d Cir. 2004); *Sosa*, 387 F.3d at 13; *see also Vargas-Garcia v. INS*, 287 F.3d 882, 884 (9th Cir. 2002)

30

(finding that language contained in a Notice of Appeal form misled aliens to believe that they need only make a brief statement of their desire for appeal rather than state the specific allegations of error). For example, even though the court in *Lopez* rejected the argument that the mere absence of notice of the right to appeal denied the alien the opportunity for meaningful review, it accepted the claim that "affirmative misstatements . . . functioned as a deterrent to seeking relief." *Lopez*, __ F.3d at __. Thus, based on the speed with which the deportation order was effectuated and the fact that the deportation proceeding's "administrative nature makes it less likely that an alien would immediately look outside the administrative process for relief[,]" the court concluded that where an alien has been misled to believe that no relief exists he will have been denied the opportunity for meaningful judicial review. *Id.*

31

Here, Charleswell appeared *pro se* and indicated his desire to contest the reinstatement order by checking the appropriate box. He was never informed that he had relief beyond this box and its corresponding statement. Consequently, the lack of any notice concerning his right to a direct appeal in combination with the misleading nature of the explicit language of the reinstatement order and the speed with which aliens are deported following a reinstatement process leads us to conclude that he was effectively denied an opportunity to seek judicial review, thereby meeting *Mendoza-Lopez*'s second requirement.

We are simply unable to fathom or rationalize a legitimate reason why the government would not want to fully inform aliens of their statutory right to appeal. Although it would require a slight change in the Reinstatement forms, a sensibly easy way to cure this glaring deficiency would be to amend the regulations governing the reinstatement process to

32

include, directly on the Notice/Intent form, some notice that an alien may seek review of the reinstatement determination in the appropriate court of appeals while at the same time changing the language that would seem to convey that the exclusive remedy for the alien is to make a statement to the immigration officer. Although this would not address the more fundamental, and potentially unconstitutional, concerns expressed by numerous courts concerning the procedures associated with the actual reinstatement proceeding, it would have cured the claimed defect in this case and would satisfy our concerns regarding the effective denial of Charleswell's opportunity to obtain judicial review. While there are other, more troubling, questions concerning the adequacy of the reinstatement procedures we need not reach them today because we find that the failure to notify Charleswell of his right to appeal, when combined with the misleading language, is determinative. Because the District

33

Court based its denial of Charleswell's attempt to collaterally attack the 2001 Reinstatement entirely on the second requirement of § 1326(d), and because this was in error, we must reverse on this point and move to the third requirement, whether the proceeding was fundamentally unfair.[11]

---

[11.]The District Court also determined that the opportunity for habeas relief precluded Charleswell from meeting § 1326(d)(2). But it is certainly not a foregone conclusion that merely technically having the opportunity to appeal, for instance through habeas relief, will preclude an alien from meeting the second *Mendoza-Lopez* requirement. *See Torres*, 383 F.3d at 100-03; *Copeland*, 376 F.3d at 68; *Sosa*, 387 F.3d at 137; *but see United States v. Roque-Espinoza*, 338 F.3d 724, 729 (7th Cir. 2003) (holding that the possibility of judicial review, including the ability to seek habeas relief, defeated an alien's claim that he was deprived of an opportunity to seek judicial review). After all, even in *Mendoza-Lopez*, the alien technically had the option of habeas review available to him but because he was not made aware of this option, he could not have been considered to have known it was available. In any event, we need not determine whether the mere opportunity for habeas review precludes an alien from meeting § 1326(d)(2) because no habeas relief exists for review of a reinstatement order. *See Berrum-Garcia v. Comfort*, 390 F.3d 1158, 1162 (10th Cir. 2004) (holding that habeas relief is unavailable for appeals from

(continued...)

34

## 2. Fundamental Unfairness

We turn next to the third requirement, under *Mendoza-Lopez* and § 1326(d)(3), that the proceeding be "fundamentally unfair."[12]    Section 1326(d)(3) does not define the term "fundamental fairness."  Thus it is necessary to briefly discuss the contours of the term.  At this juncture, while we have yet to specifically address whether 1326(d)(3), in addition to proof of some fundamental defect, also requires a showing of prejudice,

[11.](...continued)
reinstatement orders where 8 U.S.C. § 1252 provides for explicit direct review in the courts of appeal); *Castro-Cortez v. INS*, 239 F.3d 1037, 1041 (9th Cir. 2001).  The District Court, therefore, erred by including in its analysis the possibility that Charleswell could have obtained habeas review of his reinstatement order, and we need not consider whether his failure to apply for such relief prevents him from meeting § 1326(d)(2).

[12.]In *Mendoza-Lopez*, the Court assumed without deciding, at the government's request, that the alien's rights to due process were violated by "the failure of the Immigration Judge to explain adequately their right to suspension of deportation or their right to appeal." *Mendoza-Lopez*, 481 U.S. at 839.

it is essentially a foregone conclusion that this is so. Indeed, here, both parties agree that in order to succeed on a collateral challenge, under § 1326(d)(3), an alien must show not only that the underlying proceeding suffered some fundamental defect, but also that the result of the defect was prejudicial. To the extent that we have not explicitly held that prejudice is a necessary component under 1326(d)(3), we do so today. *See Torres*, 383 F.3d at 103 n. 13 (noting that every circuit to have addressed the issue has found that § 1326(d)(3) does require a showing of prejudice). Thus, under § 1326(d)(3), in order for a proceeding to be "fundamentally unfair," the alien must establish both that some fundamental error occurred and that as a result of that fundamental error he suffered prejudice. *See, e.g.*, *United States v. Perez*, 330 F.3d 97, 103 (2d Cir. 2003) ("To show fundamental unfairness, a defendant must show both a fundamental procedural error and prejudice resulting from that

36

error.") (internal quotations omitted); *United States v. Torres-Sanchez*, 62 F.3d 227, 230 (8th Cir. 1995) ("[T]he establishment of a fundamentally unfair hearing in violation of due process requires a showing both of a fundamental procedural error and that the error caused prejudice.").

Before reaching the substance of the fundamental unfairness inquiry, we pause to address the argument "that § 1326(d)(3) requires a showing that the error in the deportation hearing has resulted in a deprivation of a liberty or property interest." *Luna*, 436 F.3d at 319 (citing *Torres*, 383 F.3d at 103). To the extent that it might be argued that, for our Circuit, the sole way to establish fundamental unfairness is through proof of a deprivation of a liberty or property interest, we respectfully disagree. It is true that, in *Torres*, we held that "[w]ithout more, an error of law will ordinarily not rise to the level of a due process violation," and that because it is axiomatic

37

that discretionary relief is discretionary, there was no due process liberty right in consideration for such relief and thus, no "fundamental unfairness in failing to consider an alien for [discretionary] relief." *Id.* at 105-06.[13]   However, the question

---

[13.]This is not an altogether uncontroversial conclusion. Disagreement exists over the exact nature of an alien's right to apply for discretionary relief.  The disagreement hinges on whether the constructive denial of the ability to seek discretionary review is viewed more appropriately as a substantive liberty or property interest or, alternatively, as a fundamental procedural right.  *See United States v. Copeland*, 376 F.3d 61, 70-71 (2d Cir. 2004) (cataloguing the disagreement between the circuits); *compare Torres*, 383 F.3d at 104 ("Torres alleges fundamental unfairness because he maintains that he had a due process liberty interest in being considered for 212(c) relief.") *with Copeland*, 376 F.3d at 73 ("The issue . . . [is] whether a denial of an established right to be informed of the possibility of such relief can, if prejudicial, be a fundamental procedural error.  We believe that it can.").  Courts concluding that the right is procedural have accordingly found that a deprivation of the right may render the proceeding fundamentally unfair.  *See Copeland*, 376 F.3d at 73; *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1049 (9th Cir. 2004). Courts concluding, as we did in *Torres*, that the right is not procedural, but rather substantive, have held that a denial of the right does not render the proceeding fundamentally unfair.  *See*

(continued...)

38

we addressed, in *Torres*, was whether an *error of law* denying

an alien discretionary relief to which he may have been entitled

rendered an otherwise procedurally fair proceeding unfair.[14]

Consequently, we did not address the meaning of "fundamental

unfairness" in the context of a defendant who was challenging

some procedural defect in the underlying proceeding.

There are at least two avenues by which a proceeding can

be fundamentally unfair. First, as addressed in *Torres*, a

---

[13.](...continued)
*Torres*, 383 F.3d at 104; *United States v. Aguirre-Tello*, 353 F.3d 1199, 1205 (10th Cir. 2004) (*en banc*); *United States v. Lopez-Ortiz*, 313 F.3d 225, 231 (5th Cir. 2002), *cert. denied*, 537 U.S. 1135, 123 S.Ct. 922, 154 L.Ed.2d 827 (2003); *Smith v. Ashcroft*, 295 F.3d 425, 430 (4th Cir. 2002).

[14.]In *Torres*, an alien contested his original deportation order, which formed the basis for his criminal conviction for illegal reentry. *See id*. at 94. The alien did not contend that he was denied procedural due process, but instead that his removal proceedings were rendered unfair by the IJ's erroneous conclusion that he was not eligible for any discretionary relief. *See id*. at 104.

proceeding may be fundamentally unfair where it deprives an alien of some substantive liberty or property right such that due process is violated. Thus, in *Torres*, had section 212(c) "use[d] explicit mandatory language in its regulations directing the decisionmaker to reach a particular outcome if the substantive predicates [were] present," we would likely have found that a state-created liberty interest had been denied to the alien, rendering the proceeding fundamentally unfair if prejudice ensued. 383 F.3d at 105 (quoting *Frey v. Fulcomer*, 132 F.3d 916, 925 n.7 (3d Cir. 1997)). Because we held that the statutory language providing for discretionary relief was not mandatory, and because we viewed the right at issue to be substantive, we concluded that it did not rise to the level of fundamental unfairness.

Second, a proceeding may be fundamentally unfair where an agency has violated procedural protections such that the

40

proceeding is rendered fundamentally unfair. *See Torres*, 383

F.3d at 106. We have not yet addressed what procedural

protections, if denied, rise to the level of fundamental fairness.[15]

However, as noted in *United States v. Aguirre-Tello*, 353 F.3d

1199, 1204 (10th Cir. 2004) (*en banc*), the Supreme Court has

suggested that errors that are "so fundamental that they may

functionally deprive the alien of judicial review[]" may establish

fundamental unfairness. *Id*. at 1204 (quoting *Mendoza-Lopez*,

482 U.S. at 839 n.17). Thus, some procedural deficiencies are

so core to the fairness of a proceeding that their deprivation, if

---

[15.]In *Torres*, we simply stated that:

> although the IJ erroneously concluded that Torres was
> ineligible to be considered for 212(c) relief, the IJ did
> inform Torres of the reasons for the Government's
> charge that Torres was removable, did provide him an
> opportunity to present a defense, did secure the waiver of
> Torres's defense and appeal rights, and did grant Torres's
> request to be deported to his native country. The IJ's
> conduct in totality did not deny Torres due process.

383 F.3d at 106.

prejudicial, will render the proceeding fundamentally unfair. For instance, an alien's right to counsel in an immigration hearing before an IJ is so fundamental to the proceeding's fairness that a denial of that right could rise to the level of fundamental unfairness. *Saakian v. INS*, 252 F.3d 21, 24 (1st Cir. 2001) ("[The right to counsel] is an integral part of the procedural due process to which an alien is entitled.") (quoting *Batanic v. INS*, 12 F.3d 662, 667 (7th Cir. 1993)); *Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 554 (9th Cir. 1990); *see Xu Long Lu v. Ashcroft*, 259 F.3d 127, 132 (3d Cir. 2001) ("Congress has long recognized the importance of counsel in immigration proceedings."). The ability to build an administrative record before an IJ during his deportation hearing is likewise so fundamental such that a denial, if prejudicial, may also render the proceeding fundamentally unfair. *See Gatechaw v. INS*, 25 F.3d 841, 845 (9th Cir. 1994). Some procedural

42

defects, however, are not so fundamental that they could render the underlying proceeding fundamentally unfair. For example, the right to be told of the possibility of being free on bond pending appeal, while a procedural defect, is not fatal to the entire proceeding. *See United States v. Aguirre-Tello*, 353 F.3d 1199, 1207 (10th Cir. 2004) (holding that the denial of this procedural right did not render the proceeding fundamentally unfair).

Here, we must conclude that the INS's failure to inform Charleswell of his statutorily prescribed right to seek an appeal of his reinstatement order, combined with the misleading language contained in the reinstatement Notice of Intent form, is a fundamental defect of the nature that, if prejudicial, renders the proceeding fundamentally unfair. Under the Supreme Court's own suggested test, *see Mendoza-Lopez*, 482 U.S. at 839 n.17, if a procedural defect is fundamental where it functionally

deprives the alien of judicial review, it is *a fortiori* that the functional deprivation of a statutory right to appeal is itself a fundamental defect. *United States v. McCalla*, 38 F.3d 675, 680-81 (3d Cir. 1994) ("[A] severely deficient deportation proceeding which effectively deprives the defendant of his right of direct appeal may preclude use of that deportation as a predicate to prosecution under section 1326."); *see United States v. Fares*, 978 F.2d 52 (2d Cir. 1992) (finding that the denial of an alien's right to appeal, if prejudicial, is fundamentally unfair); *United States v. Proa-Tovar*, 975 F.2d 592, 594 (9th Cir. 1992) (*en banc*); *see also United States v. Holland*, 876 F.2d 1533, 1536 (11th Cir. 1989) ("We disagree . . . that the denial of judicial review *alone* renders the proceeding fundamentally unfair. However, we do agree that if a defendant is denied judicial review, a court must look closely at the proceeding on

44

a collateral attack to ensure that no errors seriously prejudiced the defendant.") (internal citations omitted).

We thus turn, finally, to the question of prejudice. Whether Charleswell will be successful in his collateral challenge of the 2001 Reinstatement order hinges on whether he is able to show that he was prejudiced by the procedural deprivation. *See Fares*, 978 F.2d at 57. Because the District Court made no findings on this question, we will remand so that the District Court, the more appropriate venue for the specific factual inquiry that will need to be developed, has an opportunity to address this question.

However, because our Court has never spoken directly to the issue of prejudice, we are compelled to offer some guidance.[16] For the majority of courts that have addressed it, the

---

[16.]In a not-precedential opinion *United States v. Fellows*, 50 Fed. Appx. 82, 85 (3d Cir. 2002), a panel of this court asserted,

(continued...)

standard an alien must meet to establish prejudice is "a reasonable likelihood that the result would have been different if the error in the deportation proceeding had not occurred." *Loaisiga*, 104 F.3d at 487; *see United States v. Sosa*, 387 F.3d 131, 138 (1st Cir. 2004); *United States v. Copeland*, 376 F.3d 61, 73 (2004); *United States v. Lopez-Vazquez*, 227 F.3d 476, 485 (5th Cir. 2000); *United States v. Perez-Ponce*, 62 F.3d 1120,

---

16. (...continued)
without much discussion, that prejudice requires that the alien "establish a reasonable likelihood that but for the errors complained of he would not have been deported." (quoting *Lopez-Vazquez*, 227 F.3d at 485) (internal quotations omitted). Applying this standard, the panel rejected the alien's claim that the IJ's denial of the opportunity to be considered for a waiver of deportation under section 212(c) created a reasonable likelihood that he would have avoided deportation because of his substantial arrest record (he was arrested eleven times) and his lack of connections and employment in the United States. The panel concluded that, "[h]is chance[s] of receiving a 212(c) waiver if he were eligible for one are therefore less than sterling, and we therefore find no prejudice." This standard, as propounded, was not precedential. We now adopt this standard and make it so.

1122 (8th Cir. 1995); *United States v. Aguirre-Tello*, 353 F.3d 1199, 1209 (10th Cir. 2004). As the Court in *Copeland* noted, this standard appears analogous to the standard required of a defendant to prove an ineffective assistance of counsel claim. *Copeland*, 376 F3d at 73. The Court of Appeals for the Ninth Circuit, however, has held that an alien must only show that he had a "plausible ground for relief from deportation." *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1050 (9th Cir. 2004) (internal quotations omitted). This standard appears to require the alien to make a showing merely that there was some plausible legal challenge he could have pursued had he not suffered the defect. *Id.* Thus, while there is some disagreement over the exact burden an alien carries when attempting to establish prejudice, on balance we agree with the majority of courts that prejudice requires a reasonable likelihood that the

47

result would have been different if the error in the deportation proceeding had not occurred.[17]

Just how the District Court will resolve this query, we cannot say. However, because "[r]esolution of the prejudice issue in the Section 1326(d)(3) context is somewhat akin to a trial within a trial," the District Court will have to determine whether there is a reasonable probability that Charleswell would

---

[17.]Here, it makes sense to require such a burden because Charleswell remains able to show, on the record, how, if at all, the result could have been different. However, as some courts have recognized, this standard is not necessarily fixed. Almost all courts that have established a prejudice standard have done so with scenarios that involved the erroneous denial, by an IJ, of some opportunity to apply for discretionary relief, such as a waiver under section 212(c). But some procedural defects may be so central or core to a proceeding's legitimacy, that to require an alien to establish even a "reasonable likelihood" that he would have obtained a different result establishes too high a burden. *See United States v. Luna*, 436 F.3d 312, 321 (1st Cir. 2006) ("There may be some cases where the agency's violations of a petitioner's rights were so flagrant, and the difficulty of proving prejudice so great that prejudice may be presumed . . . .") (internal citations and quotations omitted).

48

have obtained relief had he not been denied the opportunity for direct judicial review of his reinstatement order. *Copeland*, 376 F.3d at 73. Importantly, this inquiry should not be limited merely to the predicate facts underlying the reinstatement order.[18] Because Charleswell was denied the opportunity to directly appeal his reinstatement order, he was denied the opportunity to contest the predicate elements leading to his reinstatement (specifically, that he was subject to a prior order

---

[18.]Some courts have been tempted to conclude otherwise. *See De Sandoval v. Attorney General*, 440 F.3d 1276, 1285 (11th Cir. 2006) ("Petitioner fails to show how the additional procedures she demands would have changed the result in her case because she admitted all of the facts necessary to warrant reinstatement of the original removal order under § 1231(a)(5) . . . . Even if Petitioner had received all of the additional procedural protections she requests, therefore, her existing removal order still would have been reinstated."); *Alvarez-Portillo v. Ashcroft*, 280 F.3d 858, 867 (8th Cir. 2002) ("[T]he only issues to be determined are those establishing the agency's right to proceed under § 241(a)(5)–the alien's identity, the existence of a prior removal order, and whether the alien has unlawfully reentered."); *United States v. Martinez-Vitela*, 225 F.3d 665 (9th Cir. 2000).

49

of removal, that he was the same alien who was previously removed, and whether he had entered illegally). But he was also denied the opportunity to argue that the new reinstatement provision, § 241(a)(5), 8 U.S.C. § 1231(a)(5), and its corresponding regulations, 8 C.F.R. § 241.8, were impermissibly retroactive as applied to him.[19]

---

[19.] In light of the Supreme Court's very recent pronouncement in *Fernandez-Vargas*, the extent and scope of the District Court's inquiry on this point has been significantly delimited. *Compare Fernandez-Vargas v. Gonzales*, 548 U.S. __ (2006) *with Dinnall v. Gonzalez*, 421 F.3d 247 (3d Cir. 2005). The Court did not entirely foreclose the claim that § 241(a)(5) may be impermissibly retroactive when applied to aliens who reentered before IIRIRA's effective date, *see id*., at __ n. 5, but it appears to have significantly confined the grounds for such a claim. Thus, the mere fact that § 241(a)(5) deprives aliens who reentered before IIRIRA's effective date of certain forms of relief to which they were initially eligible is no longer a basis for a finding of impermissible retroactivity. *Id*. at __ n. 10 ("Fernandez-Vargas's claim to such relief was contingent, and it was up to him to take some action that would elevate it above the level of hope. It is not that these forms of relief are discretionary []; it is rather that before IIRIRA's effective date Fernandez-Vargas never availed himself of them or took action

(continued...)

50

Here, as noted above, the District Court declined to address the third *Mendoza-Lopez* requirement and made no findings on the question of prejudice. In short, if, after obtaining all the facts necessary to determine Charleswell's exact posture, the District Court determines that there is reasonable likelihood that the result would have been different had the error in the deportation proceeding not occurred, the reinstatement order will have been fundamentally unfair within the meaning of § 1326(d)(3).

## V.

For the foregoing reasons, we will vacate Charleswell's conviction and remand so that the District Court may determine whether Charleswell was prejudiced when he was deprived of the opportunity to appeal his reinstatement order.

---

[19.](...continued)
that enhanced their significance to him in particular . . . .").