**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-4133

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JOSE BENJAMIN GUZMAN-VELASQUEZ,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. M. Hannah Lauck, District Judge. (3:16-cr-00151-MHL-1)

Argued: January 31, 2019                                    Decided: March 28, 2019

Before MOTZ and QUATTLEBAUM, Circuit Judges, and DUNCAN, Senior Circuit Judge.

Affirmed by published opinion. Judge Motz wrote the opinion, in which Judge Quattlebaum and Senior Judge Duncan joined.

**ARGUED:** Laura Jill Koenig, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Richmond, Virginia, for Appellant. Daniel Taylor Young, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Geremy C. Kamens, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant. G. Zachary Terwilliger, United States Attorney, Alexandria, Virginia, S. David Schiller, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

DIANA GRIBBON MOTZ, Circuit Judge:

When Jose Benjamin Guzman-Velasquez returned to the United States after being deported, the government charged him with the crime of illegal reentry. Guzman moved to dismiss the indictment, relying solely on *United States v. Mendoza-Lopez*, 481 U.S. 828 (1987), which held that an administrative removal proceeding marred by due process defects that foreclosed judicial review could not serve as a basis for criminal conviction. The district court denied Guzman's motion. For the reasons that follow, we affirm.

I.

On December 31, 1998, Guzman, a citizen of El Salvador, entered the United States without authorization. That same day, the federal government initiated removal proceedings. An immigration judge granted Guzman voluntary departure; when he failed to timely depart, the grant converted into a removal order.

Approximately a year later, in response to a series of earthquakes, Attorney General John Ashcroft designated El Salvador for the Temporary Protected Status (TPS) program. *See* 66 Fed. Reg. 14,214, 14,214 (Mar. 9, 2001). TPS "allows eligible nationals of a foreign state to temporarily remain in the United States during the pendency of that state's designation." *Cervantes v. Holder*, 597 F.3d 229, 231 (4th Cir. 2010). Once granted, the government "shall not remove" an individual with TPS. 8 U.S.C. § 1254a(a)(1)(A). Salvadorans were eligible for TPS if they "ha[d] been 'continuously physically present' in the United States since March 9, 2001," "ha[d] 'continuously resided' in the United States since February 13, 2001," and satisfied other

2

statutory requirements. 66 Fed. Reg. at 14,214 (quoting 8 U.S.C. §§ 1254a(c)(1)(A)(i) and (ii)).

Guzman's attorney submitted a TPS application on his behalf. The Immigration and Naturalization Service (INS) requested additional documentation as to Guzman's continuous physical presence and continuous residence in the United States. Although the relevant documentation was present in the INS's file, it was not appended to the TPS application as required, and Guzman's attorney did not timely respond to the inquiry.

As a result, United States Citizenship and Immigration Services (USCIS)[1] denied Guzman's TPS application. The agency notified Guzman's lawyer that he could appeal within 30 days and indicated that it had also mailed a notice to Guzman. But Guzman did not appeal, and in 2007, he was removed. He returned without authorization sometime thereafter and was convicted of three state crimes, rendering him ineligible for TPS.

In 2016, a grand jury returned a federal criminal indictment charging Guzman with felony illegal reentry in violation of 8 U.S.C. § 1326(a). Guzman moved to dismiss the indictment, relying on *Mendoza-Lopez*. The parties stipulated that at the time Guzman applied for TPS in 2002, he satisfied all the requirements and that, had USCIS reviewed his full immigration file, he "should have been granted" TPS.

The district court denied Guzman's motion to dismiss the indictment. It reasoned that *Mendoza-Lopez* permitted collateral attacks only against removal orders, not TPS

---

[1] After the INS's request for evidence but before its final decision, Congress abolished the INS and created USCIS, in which it vested responsibility for adjudication of immigration benefits. Homeland Security Act of 2002, Pub. L. No. 107–296, § 451, 116 Stat. 2135, 2195 (codified as amended at 6 U.S.C. § 271).

denials. In the alternative, the court relied on a basis not briefed by the Government: it held that 8 U.S.C. § 1252, which limits district court jurisdiction to review immigration determinations, also deprived the court of jurisdiction to consider Guzman's defense to his criminal charge. Reserving the right to seek our review, Guzman pled guilty and timely noted this appeal.

## II.

We review de novo a denial of a motion to dismiss an illegal reentry indictment. *United States v. El Shami*, 434 F.3d 659, 663 (4th Cir. 2005). Before undertaking this review, we first outline the statutory and constitutional history at issue.

The Government must prove two elements to convict a defendant of felony illegal reentry: (1) the defendant was "deported[] or removed"[2] from the United States "while an order of . . . deportation[] or removal [was] outstanding," and (2) the defendant subsequently "enter[ed], attempt[ed] to enter, or [was] at any time found in, the United States" without authorization. 8 U.S.C. § 1326(a). Guzman asserts a due process challenge to a portion of the first element of the crime: the fact of a previous removal.

Under current law, this removal element requires proof of *both* a prior removal *and* the existence of an outstanding removal order. However, this was not the case when the Supreme Court decided *Mendoza-Lopez.* At that time, § 1326 made no reference to removal orders: the removal element required only that the defendant had "been arrested

---

[2] The terms "removal" and "deportation" are interchangeable for the purposes of § 1326. *United States v. Moreno-Tapia*, 848 F.3d 162, 165 n.1 (4th Cir. 2017).

4

and deported or excluded and deported." *Mendoza-Lopez*, 481 U.S. at 830 (quoting 8 U.S.C. § 1326 (1982)); *see also* Omnibus Consolidated Appropriations Act, 1997, Pub. L. No. 104–208, § 324(a), 110 Stat. 3009, 3009-629 (1996) (amending § 1326(a) to add first reference to deportation orders). Nor did § 1326, as a statutory matter, require a showing that the defendant's prior removal was lawful. *Mendoza-Lopez*, 481 U.S. at 834–37.

Even so, the *Mendoza-Lopez* Court held that the Due Process Clause entitles a defendant, under certain circumstances, to challenge the validity of an underlying deportation order in a criminal prosecution "in which th[e] prior deportation is an element of the crime." *Id.* at 833. The Court explained that "where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction," due process requires "*some* meaningful review of the administrative proceeding." *Id.* at 837–38 (collecting cases). Thus, when a deportation hearing is "not conducted in conformity with due process," and the due process defects "foreclose judicial review of that proceeding," then the deportation proceeding "may not be used to support a criminal conviction" for illegal reentry. *Id.* at 834, 838, 842.

Congress responded to *Mendoza-Lopez* in 1996 by enacting 8 U.S.C. § 1326(d). Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104–132, § 441(a), 110 Stat. 1214, 1279 (codified at 8 U.S.C. § 1326(d)). Under this statute, a defendant in an illegal reentry prosecution may, as a statutory defense, collaterally attack the order underlying his prior removal if he shows that (1) he exhausted any available administrative remedies against the *removal order*, (2) he was "improperly deprived . . .

5

of the opportunity for judicial review" in his *removal proceeding*, and (3) "the entry of the *[removal] order* was fundamentally unfair." 8 U.S.C. § 1326(d) (emphasis added). These statutory requirements are identical to the constitutional standards that many courts applied, prior to § 1326(d)'s enactment, in *Mendoza-Lopez* challenges to removal orders. *See, e.g.*, *United States v. Encarnacion-Galvez*, 964 F.2d 402, 406–07 (5th Cir. 1992).

III.

As Guzman acknowledges, § 1326(d) offers him no refuge: its plain text limits collateral challenges to *removal orders*, and Guzman does not question the validity of his removal order. He instead challenges USCIS's *denial of TPS* as violative of the Due Process Clause under *Mendoza-Lopez*.

Before reaching the merits of this argument, we pause to consider whether federal district courts have the power to evaluate such a claim. The district court held that it lacked jurisdiction to hear Guzman's challenge because Congress has eliminated district courts' jurisdiction to review TPS determinations. Although this may appear to be the case, it conflates the underlying determination and the specific procedural context in which this appeal arose.

While the statute on which the district court relied, 8 U.S.C. § 1252, limits only a court's jurisdiction to review *immigration* determinations, it says nothing about jurisdiction to hear a challenge to a *criminal* indictment. To the contrary, another federal statute, 18 U.S.C. § 3231, vests district courts with original jurisdiction over criminal proceedings. Thus, district courts regularly hear constitutional challenges to criminal

6

indictments like the one at hand. *See, e.g.*, *United States v. Staten*, 666 F.3d 154, 156–68 (4th Cir. 2011) (affirming district court's resolution, on the merits, of Second Amendment challenge to indictment); *United States v. Gould*, 568 F.3d 459, 462, 470–75 (4th Cir. 2009) (same regarding Commerce Clause challenge); *United States v. Jefferson*, 546 F.3d 300, 306–14 (4th Cir. 2008) (same regarding Speech or Debate Clause challenge).

Moreover, there is "no support for the contention" that § 1252's "withdraw[al] [of] jurisdiction over the original deportation order reaches collateral challenges to a criminal charge for illegal reentry," regardless of how novel (or even meritless) the challenge may be. *United States v. Charleswell*, 456 F.3d 347, 352 n.4 (3d Cir. 2006). After all, it is a cardinal principle that "repeals by implication are not favored and will not be presumed unless the intention of [Congress] to repeal is clear and manifest." *Hui v. Castaneda*, 559 U.S. 799, 810 (2010) (internal quotation marks omitted). Thus, to our knowledge, until this case no court has ever construed § 1252 to impliedly repeal § 3231.

Indeed, to do so by extending § 1252's jurisdictional limitations would raise "[s]erious constitutional concerns." *Charleswell*, 456 F.3d at 352 n.4. This is so because it would permit Congress to enact a criminal statute and then prohibit courts from exercising jurisdiction over a constitutional challenge to that statute. The Supreme Court has long recognized that such restrictions on first-instance judicial review of constitutional claims are problematic, even in immigration proceedings. *See, e.g.*, *INS v. St. Cyr*, 533 U.S. 289, 305 (2001) (teaching that "a serious Suspension Clause issue

7

would be presented" if Congress withdrew all judicial review of "pure questions of law" in immigration proceedings). Surely, they are at least as troubling in a criminal context.

Furthermore, the district court's interpretation would lead to absurd results. Section 1252 provides that "a petition for review filed with an appropriate court of appeals" is "the sole and exclusive means for judicial review of an order of removal." 8 U.S.C. § 1252(a)(5). Thus, if we were to endorse an interpretation of this statute that conflated judicial review of immigration determinations with collateral challenges in criminal proceedings, no district court would have jurisdiction to hear *any Mendoza-Lopez* or § 1326(d) challenge — even one identical to that in *Mendoza-Lopez* itself. This cannot be so. *Mendoza-Lopez* announced a constitutional due process right that Congress may not abrogate.

Guzman did not ask the district court to grant him relief from removal; he raised a constitutional challenge to a criminal charge. Notwithstanding § 1252, the district court had jurisdiction to consider his argument.


IV.

We now turn to the merits. Guzman urges us to decide a constitutional question of first impression: does the *Mendoza-Lopez* due process principle extend beyond removal orders to authorize constitutional challenges to TPS denials within criminal prosecutions for illegal reentry?

Guzman asserts that the denial of his TPS application violated due process and he was deprived of judicial review of the decision. In support of his view that *Mendoza-*

8

*Lopez* authorizes this collateral attack, Guzman relies on the Court's generalized discussion of due process constraints on "administrative proceeding[s]" that play a "critical role" in a subsequent criminal prosecution. *Mendoza-Lopez*, 481 U.S. at 837–38. The Government counters that *Mendoza-Lopez* addresses infirmities in "deportation proceedings and nothing more." Gov. Br. 30. Although the Third Circuit has interpreted *Mendoza-Lopez* to permit collateral attack against removal orders *and* reinstatement orders, *see Charleswell*, 456 F.3d at 352, we are aware of no court that has considered whether *Mendoza-Lopez* reaches challenges to TPS determinations as well.

We need not resolve this novel question. Even assuming that *Mendoza-Lopez* permits a constitutional challenge here, Guzman's claim fails at a more basic level: he has not asserted a due process violation that would render the adjudication of his TPS application fundamentally unfair. *See Mendoza-Lopez*, 481 U.S. at 837–40.

On appeal, Guzman's sole claim of fundamental unfairness is that USCIS violated his due process right to have the agency "fairly and thoroughly review the materials in the government's possession" when evaluating his TPS application. But if Guzman had a due process right to fair and thorough review, it would only require USCIS to review the materials *within his TPS application*. USCIS did exactly that: it reviewed Guzman's submission, found it to be lacking, requested additional evidence to no avail, and only then denied relief.

Guzman cites no authority to support his broader claim that USCIS was required to go beyond his application and review *all* materials in its possession. In fact, TPS applicants bear the burden to "submit all documentation as required . . . or requested."

9

8 C.F.R. § 244.9(a). Thus, the record establishes that USCIS did not err in adjudicating Guzman's TPS application — let alone err on the magnitude of fundamental unfairness.[3] *See United States v. Lopez-Collazo*, 824 F.3d 453, 467 (4th Cir. 2016).

In light of this holding, we refrain from deciding whether an attempt to extend *Mendoza-Lopez* to allow a constitutional attack on a TPS denial could, in a different case, be meritorious. *See Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988). Similarly, we need not determine whether Guzman exhausted his administrative remedies or was improperly deprived of judicial review. Because Guzman has failed to present any due process violation in the administrative proceedings he seeks to attack — the core of any *Mendoza-Lopez* challenge — we must reject his claim.

V.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.

---

[3] Before the district court, Guzman contended that his TPS attorney's ineffectiveness constituted a second, independent due process violation. But again, even if such an argument could prevail under the right circumstances, it falls short here. Guzman opted against pressing this argument in any briefing before us, citing his counsel's incompetence only to justify his failure to exhaust administrative remedies. He attempted to raise this claim at oral argument but offered no justification for his forfeiture. We therefore decline to consider this undeveloped claim. *See United States v. Bartko*, 728 F.3d 327, 335 (4th Cir. 2013).