**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-1545
_____

ROGER ESTEBAN REAL,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES
_____

On Petition for Review of a
Decision of the Board of Immigration Appeals
(A240-246-218)
Immigration Judge: Adam Panopoulos
_____

Argued on April 9, 2025

Before: HARDIMAN, PORTER, and FISHER, *Circuit Judges.*

(Filed:  July 30, 2025)

Rebecca Hufstader
Emily G. Thornton [Argued]
Legal Services of New Jersey

100 Metroplex Drive
Suite 402
Edison, NJ 08818

*Counsel for Petitioner*

Jonathan A. Robbins [Argued]
United States Department of Justice
1100 L Street NW
Washington, DC 20530

Michael C. Heyse
Craig W. Kuhn
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044

*Counsel for Respondent*

_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

Roger Esteban Real petitions this Court for review of a Board of Immigration Appeals decision denying his application for asylum as untimely. Real concedes that he filed his application more than one year after arriving in the United States, rendering him ineligible for asylum. He argues instead that the Government's failure to affirmatively notify him of the

deadline constitutes either a due process violation or an "extraordinary circumstance[]" excusing his untimely application. 8 U.S.C. § 1158(a)(2)(D). Because we are unpersuaded by the first contention and lack jurisdiction to consider the second, we will deny the petition in part and dismiss it in part.

I

A

Real is a native and citizen of Colombia. While in his home country, he participated in a series of protests regarding work, financial, and educational opportunities. Because of his participation in these protests, the police several times arrested, detained, and beat him.

Real fled Colombia with his family and arrived in the United States in March 2022. Although he did not present at a port of entry, Real surrendered to immigration authorities shortly after he arrived. Department of Homeland Security (DHS) officials "took [his] phone and clothing," "gave [him] a cell phone," and "released [him] with [his] son and wife" the next day. A.R. 265. The authorities did not issue Real a Notice to Appear (NTA) and "never asked [him] if [he] was afraid to return to Colombia." *Id.* They instructed him to attend a court hearing in 2025 and, in the interim, to regularly check in using the cell phone they gave him.

B

About a year later, Real was arrested and charged with several crimes related to a domestic dispute. Two months after that arrest, DHS issued Real an NTA charging him with

3

removability under 8 U.S.C. § 1182(a)(6)(A)(i). An Immigration Judge (IJ) found him removable, so in July 2023—sixteen months after arriving in the United States—Real applied for asylum, withholding of removal, and protection under the Convention Against Torture (CAT).

At his hearing, Real testified about the brutality that he suffered at the hands of Colombian police. The IJ concluded that Real had shown "cumulative harm" in Colombia that "rose to the level of persecution," so it granted him withholding of removal. A.R. 46. But the IJ denied Real's application for asylum, finding that he had not complied with the one-year deadline for such applications and did not "qualify as a member of the *Mendez-Rojas* settlement agreement from the Western District of Washington."[1] A.R. 45–46; *see also* 8 U.S.C. § 1158(a)(2)(B). The IJ further reasoned that "lack of knowledge about the law is not sufficient to excuse the one-

---

[1] In *Mendez Rojas v. Johnson*, a district court ruled that the government's failure to provide a class of aliens with notice of the one-year asylum bar violated the Immigration and Nationality Act (INA), Administrative Procedure Act (APA), and the Fifth Amendment's Due Process Clause. 305 F. Supp. 3d 1176, 1178 (W.D. Wash. 2018). Following that decision, the government settled the case and committed to (1) retroactively accept as timely any asylum applications filed by class members before March 31, 2022, and (2) prospectively amend NTAs to provide notice of the one-year bar. Real concedes that he is not a *Mendez Rojas* class member and is therefore ineligible for retroactive relief on that basis.

4

year bar absent extraordinary circumstances" and that Real did not demonstrate such circumstances. A.R. 45.

Real appealed the denial of his asylum application to the Board of Immigration Appeals. The Board dismissed the appeal, reasoning that (1) Real was not a *Mendez Rojas* class member, and (2) "lack of knowledge of the 1-year filing deadline is not an extraordinary circumstance within the meaning of" 8 U.S.C. § 1158(a)(2)(D). A.R. 3–4. Real filed this timely petition.

## II

The Board had jurisdiction under 8 C.F.R. § 1003.1(b)(3). We have jurisdiction under 8 U.S.C. § 1252(a)(1) to consider "constitutional claims or questions of law" arising from the Board's order, which we review de novo. *Myrie v. Att'y Gen.*, 855 F.3d 509, 515 (3d Cir. 2017). The parties dispute whether we have jurisdiction to review the "extraordinary circumstances" determination under 8 U.S.C. § 1158(a)(2)(D).

## III

To obtain asylum under the Immigration and Nationality Act (INA), a petitioner must "demonstrate[] by clear and convincing evidence that [his] application has been filed within 1 year after the date of [his] arrival in the United States." 8 U.S.C. § 1158(a)(2)(B). Real concedes that he violated the one-year bar but offers two excuses for that oversight: the Government's failure to apprise him of the one-year bar either (1) violated his due process rights or (2) is an "extraordinary circumstance[] relating to the delay in filing" his application. 8 U.S.C. § 1158(a)(2)(D). We address each

5

argument in turn.

A

The Fifth Amendment guarantees aliens within the United States, even those who entered unlawfully, the "traditional standards of fairness encompassed in due process of law." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953); *see also* U.S. Const. amend. V. That protection applies not only to removal but also to applications for discretionary relief, such as asylum. *See Calderon-Rosas v. Att'y Gen.*, 957 F.3d 378, 386 (3d Cir. 2020).

Real argues that the Government's failure to advise him of the one-year asylum deadline violated his due process rights. He relies principally on *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950). By not informing him of the one-year asylum bar, Real says, the Government failed to provide notice "reasonably calculated, under all the circumstances" to apprise him of his rights under the INA.[2]

---

[2] Real also offers a due process theory based on the three-part balancing test outlined in *Mathews v. Eldridge*, 424 U.S. 319 (1976). But it is unclear how this approach meaningfully differs from his *Mullane* theory. As the Government points out, both "at [their] core revolve[] around whether Real received [c]onstitutionally sufficient notice." Gov't Br. 14. Because these two theories involve the same perceived procedural issue, we consider them together. *See Dusenbery v. United States*, 534 U.S. 161, 168 (2002) ("[W]e have never viewed *Mathews* as announcing an all-embracing test for deciding due process claims. Since *Mullane* was decided, we have regularly turned

6

Real Br. 9 (quoting *Mullane*, 339 U.S. at 314). We are unpersuaded.

*Mullane* considered whether publication was constitutionally sufficient notice to beneficiaries of a common trust fund. 339 U.S. at 307. The trustee of the fund asked for a judicial decree settling its accounts as to all parties with an interest in it, but it provided notice to affected parties only through publication in a local newspaper. *Id.* at 309–10. The Court found this notice insufficient. Because many of the affected parties had ascertainable identities and whereabouts, notice by publication was not "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 314, 318–19.

Real's case is a far cry from *Mullane*. Unlike *Mullane*, this case concerns the Government's alleged obligation to notify an alien of his rights under a generally applicable immigration statute. That statute is published in the United States Code, and implementing regulations are published in the Federal Register. *See* 8 U.S.C. § 1158(a)(2)(B); 8 C.F.R. § 1208.4(a). In the mine-run of cases, that is enough to provide constitutionally sufficient notice of the law's contents. *See Cervase v. Off. of Fed. Reg.*, 580 F.2d 1166, 1168–69 (3d Cir. 1978) ("[P]ublication in the Federal Register gives [regulated parties] constructive notice of the existence of the regulation."); *see also Alquijay v. Garland*, 40 F.4th 1099, 1104 (9th Cir. 2022) ("[O]nce a regulation setting a filing deadline [is] published in the Federal Register, all applicants

to it when confronted with questions regarding the adequacy of the method used to give notice.").

7

[for asylum] [are] presumptively deemed to have been given notice of the deadline." (citation modified)).

Real insists that publication is not always sufficient to provide notice of a law's contents. He relies primarily on two cases. In the first, *United States v. Charleswell*, this Court considered whether an alien who failed to timely appeal an adverse immigration decision was denied meaningful judicial review. 456 F.3d 347, 349 (3d Cir. 2006). We declined to "decide whether the mere lack of notice concerning the right to take a direct appeal from an administrative order can ever be considered an effective denial of meaningful judicial review." *Id.* at 356. Instead, we held that Charleswell was denied meaningful judicial review because he was served a document—called "Notice of Intent/Decision to Reinstate Prior Order"—containing "misleading" information about his appeal rights. *Id.* The Notice informed aliens that they "may contest this determination by making a written or oral statement to an immigration officer," but they "do not have a right to a hearing before an immigration judge." *Id.* (citation omitted). We concluded that "reasonable persons reading this Notice would be led to believe that their only avenue for relief if they desire to contest the reinstatement order would be to make either a written or oral statement to the immigration officer." *Id.* at 356–57.

Real also relies on *Mendez Rojas*. The alien plaintiffs there brought a due process challenge like Real's, arguing that the government's "failure to affirmatively require officials to provide any notice of the one-year deadline is a policy that is not 'reasonably calculated' to provide notice to the class members." *Mendez Rojas*, 305 F. Supp. 3d at 1184 (citation omitted). The district court agreed with the plaintiffs, relying primarily on (1) the class members' "severe trauma," lack of

8

English-speaking skills, and unfamiliarity with the U.S. immigration system; and (2) the "confusing" and "affirmatively misleading" documents that the government provided to them. *Id.* at 1185–86 (citation modified).

Neither decision bears the weight Real places on it. In both cases, the aliens were denied the opportunity for review because of the lack of affirmative notice *combined with* misleading government communications. *See Charleswell*, 456 F.3d at 357 ("[W]here an alien is misled to believe that he has no opportunity for judicial review, the lack of an affirmative notice of the right to an appeal may combine to constitute a denial of the meaningful opportunity for judicial review."); *Mendez Rojas*, 305 F. Supp. 3d at 1186 (same).[3]

Attempting to analogize to *Charleswell* and *Mendez Rojas*, Real claims that he "encountered a series of misleading interactions with DHS officers." Real Br. 17. But the record does not support that assertion. He notes that DHS officials scheduled a court date and gave him a cell phone through which to report updates, but he identifies no record evidence of misleading statements, oral or written, accompanying those instructions. Indeed, unlike the class members in *Mendez Rojas*, Real did not ask for asylum when he was first detained, so DHS officials did not discuss that process. Real suggests that he received misleading "paperwork" when he arrived at the border, but no such paperwork appears in the record. Real

---

[3] To the extent that *Mendez Rojas* suggests that publication in the Federal Register is not enough to apprise aliens of the one-year bar, regardless of the government's conduct, its reasoning is unpersuasive—and likely in tension with Ninth Circuit precedent. *See Alquijay*, 40 F.4th at 1103–04.

Br. 17. And when pressed for evidence of misleading government statements at oral argument, Real's counsel could not identify any. In short, because Real cannot point to any record evidence of misleading government communications, his due process challenge fails.

B

Real alternatively argues that his failure to abide by the one-year asylum bar is excused by "extraordinary circumstances." 8 U.S.C. § 1158(a)(2)(D). We lack jurisdiction to consider this argument.

Three provisions of the INA bear on our jurisdiction over the "extraordinary circumstances" determination. *Id.* Under 8 U.S.C. § 1158(a)(2)(D), "[a]n application for asylum of an alien may be considered, notwithstanding [the one-year bar], if the alien demonstrates to the satisfaction of the Attorney General . . . extraordinary circumstances relating to the delay in filing." A neighboring provision, 8 U.S.C. § 1158(a)(3), then limits judicial review of that question: "[n]o court shall have jurisdiction to review any determination of the Attorney General under" the paragraph containing the one-year bar and "the extraordinary circumstances" exception. Finally, a catchall provision in another section of the INA restores federal appellate courts' jurisdiction over "constitutional claims or questions of law raised upon a petition for review." 8 U.S.C. § 1252(a)(2)(D).

This Court first considered the interplay among these provisions in *Sukwanputra v. Gonzales*, 434 F.3d 627 (3d Cir. 2006). We concluded there that we lacked jurisdiction to review the Board's "extraordinary circumstances" determination, reasoning that the "language requiring an

10

asylum applicant to make a demonstration to the Attorney General's 'satisfaction' implies that the Attorney General's determination entails an exercise of discretion." *Id.* at 635 (quoting 8 U.S.C. § 1158(a)(2)(D)). Because "extraordinary circumstances" is a discretionary judgment, we explained, it is not covered by the carveout for "constitutional claims or questions of law" in 8 U.S.C. § 1252(a)(2)(D). *Id.* So *Sukwanputra* established that we lack jurisdiction over the Board's "extraordinary circumstances" determination. *See also Jarbough v. Att'y Gen.*, 483 F.3d 184, 190 (3d Cir. 2007).

Real, along with the dissent, argues that things have changed because of the Supreme Court's decisions in *Guerrero-Lasprilla v. Barr*, 589 U.S. 221 (2020) and *Wilkinson v. Garland*, 601 U.S. 209 (2024). They read those decisions to suggest that the "extraordinary circumstances" inquiry is really a mixed question of law and fact reviewable under 8 U.S.C. § 1252(a)(2)(D), abrogating our cases to the contrary. We disagree.

The petitioners in *Guerrero-Lasparilla* asked the Board to equitably toll the 90-day deadline for reopening their removal proceedings. 589 U.S. at 226; *see* 8 U.S.C. § 1229a(c)(7)(C)(i). The Board declined that request, reasoning that the petitioners failed to demonstrate the "due diligence" required for equitable tolling. *Guerrero-Lasprilla*, 589 U.S. at 226. On petition for review, the Fifth Circuit concluded that the due diligence inquiry was a factual one, so it lacked jurisdiction to review the Board's decision. *Id.* The Supreme Court disagreed, explaining that "the phrase 'questions of law'" in 8 U.S.C. § 1252(a)(2)(D) "includes the application of a legal standard to undisputed or established facts." *Id.* at 225. Since the petitioners did not dispute the facts relevant to the equitable tolling question, the Court concluded

11

that the Fifth Circuit had jurisdiction to review the Board's decision on due diligence. *Id.* at 226–27.

The Supreme Court reached a similar conclusion in *Wilkinson*. That case concerned a petitioner's invocation of 8 U.S.C. § 1229b(b)(1)(D), which requires aliens seeking cancellation of removal to show "exceptional and extremely unusual hardship" to a qualifying spouse, parent, or child. *Wilkinson*, 601 U.S. at 211–12. Our Court had declined to review the Board's decision on that score, reasoning that the "exceptional and extremely unusual hardship" inquiry is a discretionary judgment. *Id.* at 216. The Supreme Court disagreed. "[E]xceptional and extremely unusual hardship" is a legal standard, the Court explained, so applications of that standard to undisputed facts are reviewable under 8 U.S.C. § 1252(a)(2)(D). *Id.* at 217.

The dissent insists that Real's case is "indistinguishable" from *Guerrero-Lasprilla* and that it "resembles" *Wilkinson*. Dissent Op. 2. After all, he tells us, all three cases "involve[] the application of law to established facts," so all three should be reviewable as "questions of law" under 8 U.S.C. § 1252(a)(2)(D). Dissent Op. 1. But the dissent downplays a key—indeed, *the* key—distinction between this case and those. Unlike the standards at issue in *Guerrero-Lasprilla* and *Wilkinson*, the relevant statute here instructs the petitioner to meet its requirements "to the satisfaction of the Attorney General." 8 U.S.C. § 1158(a)(2)(D). The inclusion of that phrase reflects Congress's judgment that "extraordinary circumstances" is a discretionary determination not subject to

12

judicial review.[4]

*Wilkinson* confirms this view. The Court there explicitly distinguished the "exceptional and extremely unusual hardship" standard in 8 U.S.C. § 1229b(b)(1)(D) from standards located elsewhere in the INA that are applied "to the satisfaction of the Attorney General." *Wilkinson*, 601 U.S. at 224 (citing 8 U.S.C. § 1182(h)(1)(B) and § 1182(i)(1)). While the former standard presented a "question[] of law" reviewable under 8 U.S.C. § 1252(a)(2)(D), the latter ones called for discretionary judgments shielded from judicial scrutiny.

Unable to escape this discretionary language, our dissenting colleague warns of "the consequences of insulating these agency determinations from judicial review." Dissent Op. 6. He urges us instead to adhere to our "basic judicial task" of "saying what the law is." *Id.* (citation modified). But that is precisely what we have done here. Congress expressly entrusted the Attorney General to determine when "extraordinary circumstances" excuse an untimely asylum application, and it instructed that "[n]o court shall have jurisdiction to review" her judgment on that score. 8 U.S.C. § 1158(a)(3). That is the law, and we must apply it irrespective

---

[4] Relying on a federal regulation that guides immigration officials' exercise of discretion, the dissent contends that the "extraordinary circumstances" determination is really a matter of "legal judgment." Dissent Op. 2. But that regulation proposes only a non-exhaustive list of possible "extraordinary circumstances," and even then, as the dissent concedes, the list is chock-full of "fact-intensive considerations." *Id.*; *see* 8 C.F.R. § 1208.4(a)(5). So we reject the dissent's contention that 8 U.S.C. § 1158(a)(2)(D) contains reviewable "embedded legal questions." Dissent Op. 4.

of the "consequences" that animate the dissent. Dissent Op. 6; *see Patel v. Garland*, 596 U.S. 328, 346 (2022) ("[P]olicy concerns cannot trump the best interpretation of the statutory text.").

We therefore agree with the Eleventh Circuit that federal appellate courts lack jurisdiction over the "extraordinary circumstances" inquiry, even after *Guerrero-Lasprilla* and *Wilkinson* expanded the definition of "questions of law" under 8 U.S.C. § 1252(a)(2)(D). *See A.P.A. v. Att'y Gen.*, 104 F.4th 230, 241 (11th Cir. 2024); *see also Pacheco-Moran v. Garland*, 70 F.4th 431, 438 (8th Cir. 2023) (concluding, before *Wilkinson*, that the "extraordinary or changed circumstances" determination "is an unreviewable discretionary judgment of the Attorney General"). So we cannot consider Real's contention that "extraordinary circumstances" excuse his failure to timely seek asylum under the INA. 8 U.S.C. § 1158(a)(2)(D).

\* \* \*

The Government's failure to apprise Real of the one-year asylum application deadline did not offend the Due Process Clause of the Fifth Amendment. And we lack jurisdiction to consider his claim concerning 8 U.S.C. § 1158(a)(2)(D). So we will deny the petition in part and dismiss it in part.

14

*Roger Esteban Real v. Attorney General United States of America,* No. 24-1545

FISHER, *Circuit Judge*, dissenting.

The majority holds that we lack jurisdiction to review the BIA's determination that Real failed to show "extraordinary circumstances" under 8 U.S.C. § 1158(a)(2)(D) sufficient to excuse the late filing of his asylum application. I disagree; the "extraordinary circumstances" timeliness determination involves the application of law to established facts—a legal question we have jurisdiction to review. Because I would hold that we have jurisdiction, I would go on to review the petition's merits and would conclude that Real meets the standard for "extraordinary circumstances." I would therefore grant his petition, vacate the BIA's dismissal, and remand for the IJ to consider granting asylum in the exercise of discretion.

The majority relies primarily on *Sukwanputra v. Gonzales*, 434 F.3d 627, 635 (3d Cir. 2006), but that holding preceded, and is incompatible with, recent Supreme Court decisions in *Wilkinson v. Garland*, 601 U.S. 209 (2024); *Patel v. Garland*, 596 U.S. 328 (2022); and *Guerrero-Lasprilla v. Barr*, 589 U.S. 221 (2020). As discussed below, these cases make clear that appellate courts retain jurisdiction over legal questions embedded within the agency's § 1158(a)(2)(D) "extraordinary circumstances" determination.

In *Guerrero-Lasprilla*, the Court held that a timeliness inquiry in the form of an equitable tolling determination—specifically, whether a petitioner acted with "due diligence" sufficient to toll the 90-day deadline for reopening removal proceedings—involved the application of a legal standard to established facts. 589 U.S. at 225–26. This rendered it a "question[] of law," which we have jurisdiction to review under 8 U.S.C. § 1252(a)(2)(D). *Id.* at 226. The question presented by Real, whether he met the standard necessary to

1

excuse his late asylum filing, is indistinguishable from the *Guerrero-Lasprilla* equitable tolling question, as it likewise requires application of a legal standard to established facts. *See id.* at 230–31.

The statutory criterion of "extraordinary circumstances" calls for a multi-layered inquiry rather than a purely discretionary call. The statute's implementing regulations provide a non-exhaustive list of possible "extraordinary circumstances," including what kinds of events qualify; how proximate the cause must be to the delay; and what evidentiary burden applies. 8 C.F.R. § 1208.4(a)(5). These are fact-intensive considerations for the IJ, yes, but they also implicate legal criteria and therefore legal judgment, as "whether a given set of facts meets a particular legal standard presents a legal inquiry." *Guerrero-Lasprilla*, 589 U.S. at 227 (citation modified).

*Wilkinson* reinforces this result. There, the Court reversed our determination that we did not have jurisdiction to review the BIA's cancellation of removal decision—what we had considered a "discretionary" determination insulated from review. 601 U.S. at 209, 216–17. The case involved the "exceptional and extremely unusual hardship" standard under 8 U.S.C. § 1229b(b)(1)(D)—a fact-intensive decision that procedurally resembles the agency's "extraordinary circumstances" determination. *See id.* at 211–12. The Court held that we were wrong to decline jurisdiction because the petitioner's challenge focused on how the agency applied the legal standard to his established set of facts; thus, the issue was a "question[] of law" subject to our review. *Id.* at 212, 217, 221. The presence of discretion did not foreclose our review because the "threshold question" of eligibility for relief was mixed, a conclusion "compelled" by *Guerrero-Lasprilla*. *Id.* at 221 (citation modified). Here, the § 1158(a)(2)(D) standard

2

similarly operates like a gateway, a threshold eligibility criterion akin to tolling or statutory exceptions that screen petitioners before any ultimate grant of discretionary relief, which requires factual assessments to be made within a legal framework. *See* 8 U.S.C. § 1158(a)(2)(D). We do not invade the agency's discretion by checking whether it applied the correct law. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 385 (2024).

I disagree with the majority's approach to interpreting all discretionary determinations under the INA through a single lens. Such determinations are not treated uniformly for purposes of judicial review. Rather, "[w]hen a statute is reasonably susceptible to divergent interpretation, we adopt the reading that accords with traditional understandings and basic principles: that executive determinations generally are subject to judicial review." *Kucana v. Holder*, 558 U.S. 233, 251 (2010) (citation modified). Nevertheless, the majority relies on *Wilkinson* to argue that we lack jurisdiction because § 1158(a)(2)(D) includes the phrase "to the satisfaction of the Attorney General," which is language shared by some provisions delineating determinations insulated from review, like those involving the "extreme hardship" standard. *See Wilkinson*, 601 U.S. at 224 (discussing 8 U.S.C. §§ 1182(h)(1)(B), 1182(i)(1)). For example, under § 1182(h)(1)(B), a noncitizen who is inadmissible due to past criminal convictions may receive a waiver of admission or status where they "establish[] to the satisfaction of the Attorney General that [their] denial of admission would result in extreme hardship to [a] United States citizen or lawfully resident [family member]." 8 U.S.C. §§ 1182(h)(1)(B). There, the agency evaluates "extreme hardship" by conducting a wide-ranging, individualized assessment of the noncitizen's personal circumstances and familial relationships. *See* U.S.

3

Citizenship & Immigration Servs., *USCIS Policy Manual*, vol. 9, pt. B, ch. 5, *Extreme Hardship Considerations & Factors* (updated June 24, 2025). But that determination reflects value-laden, policy-based, factual judgments lacking legal inquiry—the type of determination that Congress intended to insulate. *See, e.g.*, *Patel*, 596 U.S. at 339. Real's case is categorically different because it presents an underlying legal issue in the form of an equitable tolling inquiry—a paradigmatically mixed question within our jurisdiction to review. *See Guerrero-Lasprilla*, 589 U.S. at 227.

While the "extraordinary circumstances" statute contains some discretion-triggering language, that does not render the entire determination purely factual or unreviewable. *See* § 1158(a)(2)(D). "A mixed question may require 'primarily legal or factual work,'" but just because it may "require[] a court to immerse itself in facts does not transform the question into one of fact." *Wilkinson*, 601 U.S. at 221–22 (quoting *U. S. Bank N. A. ex rel. CWCapital Asset Mgmt. v. Vill. at Lakeridge, LLC*, 583 U.S. 387, 396 (2018)). Even where a statute delegates discretion to an agency, courts retain jurisdiction to review embedded legal questions. *See id.* at 224–25.

With jurisdiction to review the petition, the next step would be to address the merits: whether the BIA erred in refusing to excuse Real's late filing. I would hold that it did. This case exemplifies "extraordinary circumstances" because we have made clear that equitable tolling is warranted where the Government "has misled a petitioner about what course of action to follow." *See Alzaarir v. Att'y Gen.*, 639 F.3d 86, 90 (3d Cir. 2011).

That is exactly what happened here. While the record is not clear on details, the Government admitted that Real "probably did turn himself in." A.R. 117. He did not cross the

4

border at a point of entry but was not clandestine, testifying that he crossed "where some of the coyotes told me to cross . . . . and then I surrender[ed] myself. I did not know . . . if this is illegal or not." A.R. 113. He complied with processing and was released with instructions to check in and await a hearing, again, which he did. Yet, despite being asylum-eligible, he was not placed in expedited removal, not given a credible fear interview, not advised of the asylum process, and not issued an NTA for over a year. At no point was he informed, verbally or in writing, of the one-year asylum deadline. Because Real presented himself to authorities and did what they told him to do, he reasonably believed that he would have an opportunity to present all his claims.

And while asylum information was available through the Federal Register, we have no bright-line rule that publication always constitutes sufficient notice. *See United States v. Charleswell*, 456 F.3d 347, 355–57 (3d Cir. 2006). In fact, courts have found that a statute alone is insufficient when paired with misleading instructions and personal vulnerabilities. *E.g.*, *Rojas v. Johnson*, 305 F. Supp. 3d 1176, 1185–88 (W.D. Wash. 2018). Like many noncitizens who qualify for asylum, Real relied on a Spanish-speaking court interpreter because he lacked English fluency; he had no legal guidance; and he was grappling with past trauma that would later be considered "credibly established" and "adequately corroborated." A.R. 44. Viewing the record objectively, there were no red flags that would alert even English-speaking, reasonable noncitizens that they needed to take further action after being processed, released, and given a court date. The Government lulled Real into inaction. *See Rojas*, 305 F. Supp. at 1185.

Taken together, these facts reflect a fundamental lack of notice. The Government's conduct not only misled Real, but it

5

actively deprived him of a meaningful opportunity to comply with the law. *See Charleswell*, 456 F.3d at 357. If this does not constitute "extraordinary circumstances," it is difficult to imagine what does.

As a final point, we should be wary of the consequences of insulating these agency determinations from judicial review. As the Supreme Court recently emphasized, courts' "basic judicial task [is] 'say[ing] what the law is.'" *Loper Bright*, 603 U.S. at 410 (second alteration in original) (quoting *Marbury v. Madison*, 5 U.S. 137, 177 (1803)). "Legal interpretation has been, 'emphatically,' 'the province and duty of the judicial department' for at least 221 years." *Id.* at 412 (quoting *Marbury*, 5 U.S. at 177) (citation modified). Our independent judgment does not vanish simply because a legal question arises at the threshold of a discretionary decision. Misapplication of the "extraordinary circumstances" standard can prevent even meritorious asylum seekers from having their claims heard. Real has already met the higher burden for withholding of removal, which required him to prove the same elements as asylum. *See Lukwago v. Ashcroft*, 329 F.3d 157, 182 (3d Cir. 2003). But for the misapplied standard, his asylum claim would have succeeded. This is precisely the kind of legal error § 1252(a)(2)(D) allows us to correct.

Justice Jackson, concurring in *Wilkinson*, rightly observed that Congress retains the authority to more clearly limit judicial review, but it has not done so. 601 U.S. at 227. Until it does, we are required to give full effect to the jurisdictional boundary marked out by § 1252(a)(2)(D), including its promise of judicial oversight for legal questions. To do otherwise is to repeat the mistake that *Wilkinson* corrected.

I would hold that we have jurisdiction to review whether Real demonstrated "extraordinary circumstances" under

§ 1158(a)(2)(D), and that Real has done so. I would grant the petition for review, vacate the BIA's dismissal, and remand for the IJ to consider granting asylum in the exercise of discretion. For the above reasons, I respectfully dissent.